# Tab 9

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| A.B. DICK COMPANY, *et al.,* | : Case No. 04-12002 (JLP) |
| | : |
| | : Jointly Administered |
| | : |
| Debtors. | : Hearing Date: November 17, 2004 at 11:30 a.m. |
| | : Objection Deadline: November 17, 2004 at 11:30 a.m. |
| | : |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF A.B. DICK AND COMPANY TO EMERGENCY MOTION OF MITSUBISHI
IMAGING (MPM), INC. FOR ORDER DETERMINING VALIDITY OF
ELECTION UNDER POSTPETITION PRIVATE LABEL SALES AGREEMENT
AND MOTION FOR AN ORDER REFUNDING CREDIT TO ESTATES**

The Official Committee of Unsecured Creditors (the "Committee") of the A.B.

Dick Company, *et al* (the "Debtors"), by its undersigned counsel, submits this response

to the Emergency Motion Of Mitsubishi Imaging (MPM), Inc. ("Mitsubishi") for Order

Determining Validity of Election Under Postpetition Private Label Sales Agreement (the

"Motion") and submits its own motion (the "Cross-motion") for an Order Refunding the

Credit Balance to the Estates, and respectfully states as follows:

**I. JURISDICTION**

1.      Jurisdiction to consider this matter is vested in the Court pursuant to 28

U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II. BACKGROUND**

2.      On July 13, 2004, each of the Debtors filed voluntary petitions for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

56458B-1

3.      The Debtors continue in possession of their respective properties and management of their respective businesses, although after the sale of substantially all their assets to Purchaser, their business consists of liquidating the remaining assets of the estates and administering the estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      On July 14, 2004, this Court entered an Order consolidating these cases for administrative purposes only.

5.      On July 23, 2004, the Office of the United States Trustee appointed the Committee in these jointly administered chapter 11 cases.

6.      In August of 2004, the Debtors and Mitsubishi entered into an agreement (the "Postpetition Private Label Sales Agreement"), attached as Exhibit A to the Emergency Motion Seeking an Order Directing Mitsubishi Imaging (MPM) Inc. to Comply with This Court's Sale Order filed by Presstek (the "Presstek Motion").

7.      The Postpetition Private Label Sales Agreement, *inter alia,* provides:  title to all Product remained with Mitsubishi until delivery to Debtors' distribution center, ¶ 8b; Mitsubishi had the right to terminate the Postpetition Private Label Sales Agreement immediately upon sale by Debtors of substantially all of their assets by providing notice (a "Termination Notice") to Debtors, ¶ 1 2A(2)(d); within ten days of delivery by Mitsubishi of a Termination Notice, Debtors had the right to exercise an election (the "Pipeline Purchase Election") to purchase all inventory subject to outstanding purchase orders not yet fully paid for by Debtors (the "Pipeline Product") for the full balance remaining due, ¶ 1 2C; and after termination of the agreement, Mitsubishi is granted certain rights to resell the Pipeline Product and Debtors were granted certain rights to a

564588v1                                    2

refund (the "Refund") of a portion of the amounts paid by Debtors on account of such Pipeline Product, ¶ 8F.

8.    Under this agreement, $2.5 million was paid by the Debtors to Mitsubishi.

9.    On November 3, 2004, the Court entered an order (the "Sale Order") approving the sale (the "Sale") of substantially all of the Debtors' operating business assets to Silver Acquisitions Corp ("Silver"), a subsidiary of Presstek, Inc. ("Presstek") (hereafter, Presstek and Silver may be referred to as the "Purchaser"), a copy of the Sale Order is attached hereto as exhibit A.

10.    The Postpetition Private Label Sales Agreement was not assigned to Purchaser as part of this sale. It is also undisputed that Mitsubishi owns goods subject to the Postpetition Private Label Sales Agreement that remain in the possession of Mitsubishi.

11.    On November 5, 2004, following closing on the sale of substantially all of Debtors assets, Mitsubishi sent a Termination Notice to the Debtors.

12.    Absent the exercise of the Pipeline Purchase Option, Mitsubishi may sell the goods for their account and must repay a portion of approximately $2.5 million previously paid by the estates to Mitsubishi.

13.    On November 10, 2004, Presstek purported to exercise the Pipeline Purchase Option.

14.    On November 11, 2004, Mitsubishi advised Presstek in writing that, because the Postpetition Private Label Sales Agreement was not assigned by the Debtors to Presstek, only the Debtors could exercise the Pipeline Purchase Option.

15.    On the morning of November 12, 2004, the Debtors purported to exercise

564588v1                                        3

the Pipeline Purchase Election with a direction to release the Pipeline Product to Presstek. *See* E-mail from Robert Lapowsky, counsel to Mitsubishi, to Gary Ravert, Counsel to Presstek, attached hereto as Exhibit B.

16.     However, in the afternoon of November 12, 2004, the Debtors advised Mitsubishi that it was withdrawing the Pipeline Purchase Election. *See* E-mail from H. Jeffrey Schwartz, counsel to the Debtors, to James Ricciardi, counsel to the Committee, sent at 2:53P.M.on November 12, 2004, attached hereto in Exhibit C. The Debtors' withdrawal of the election followed receipt by counsel to the Debtors of an email from counsel to the Committee stating that the Committee considered the Refund to be a valuable asset of the Debtors' estates which had not been purchased by Purchaser. *See* E-mail from James Ricciardi, counsel to the Committee, to H. Jeffrey Schwartz, counsel to the Debtors, sent at 2:41P.M. on November 12, 2004, attached hereto in Exhibit C. The E-mail further stated that it is the Committee's position that any exercise of the Pipeline Purchase Option was outside the ordinary course of Debtors' newly circumscribed business and required court approval pursuant to section 363 of the Bankruptcy Code in order to be valid. *See* E-mail from James Ricciardi, counsel to the Committee, to H. Jeffrey Schwartz, counsel to the Debtors, sent at 4:51P.M. on November 12, 2004, attached hereto in Exhibit C.

17.     In response, Presstek has asserted that it believes that it has purchased the Pipeline Inventory and any rights the Debtors may have to the Refund. The Committee disputes that position.

18.     Later in the day on November 12, 2004, following receipt by counsel to the Debtors of an undertaking by Presstek to hold the Debtors' estates harmless, under

A- 0580

certain circumstances, the Debtors advised Mitsubishi that it was reinstating their Pipeline Purchase Option.

19.    The Pipeline Purchase Option expired at 11:59 P.M. on November 15, 2004.

20.    Since section 363 of the Bankruptcy Code requires notice, hearing and court approval for any action outside the ordinary course of business (surely one using valuable property of the estates, the $2.5 million refund, and providing no corresponding benefit, would require this determination), no undertaking by a private party can write section 363 out of the Bankruptcy Code or vitiate the Debtors' fiduciary duty to creditors.

## III. ARGUMENT

### The Purchaser Chose to Exclude the Mitsubishi Assets From the Sale

21.    The Sale Order authorizing the Sale states in paragraph 22 that "[t]o the extent of any inconsistency between the provisions of the Asset Purchase Agreement, any documents executed in connection therewith, and this Order, the provisions contained herein shall govern." Therefore, the Sale Order controls over any general or explicit provision found in the Asset Purchase Agreement.

22.    The Sale Order decrees that

> Notwithstanding any other provision of this Order, neither the . . . Private Label Sales Agreement, in each case between A.B. Dick and Mitsubishi Imaging (MPM), Inc. ("Mitsubishi") shall be deemed assumed or assumed and assigned to Silver pursuant to this Order. The Sale Debtors reserve their rights to seek assumption and assignment in the future. . . .

Sale Order at ¶ 9.

23.    Any interest that the Purchaser believes may have been created by the Asset Purchase Agreement was terminated by this decretal paragraph of the Sale Order.

564588v1                              5

24.    The Sale Order clearly and unambiguously excludes the Postpetition Pipeline Private Label Sales Agreement from being assigned to the Purchaser.

25.    The Purchaser cannot now seek an interest in an asset, or rights derived therefrom, that it chose explicitly to exclude in the Sale Order.

**The Pipeline Purchase Option Was Not and Cannot Be Validly Exercised**

26.    The Pipeline Purchase Option has not been validly exercised by the Debtors and has now expired.

27.    The Debtors', though they had purported to exercise the Pipeline Purchase Option on the evening of November 12, 2004, were not legally able to do so.

28.    Primarily, the Debtors could not exercise the Pipeline Purchase Option without the prior approval of this Court because it is not within the ordinary course of business of these estates—these estates are no longer buying and selling printers, product, supplies and inventory. As such, the Debtors would need to seek Court approval of the transaction under section 363 of the Bankruptcy Code, or arguably under the abandonment section, section 554 of the Bankruptcy Code, in order to exercise the Pipeline Purchase Option.

29.    The Debtors failed to seek or obtain any such relief from this Court. As such, the Debtors have not validly exercised this option and this option has expired by its terms.

30.    Even if the Debtors were to have filed a motion seeking Court approval allowing the Debtors to exercise the Pipeline Purchase Option, there is no business justification for the Debtors to sacrifice the Refund for the benefit of the Purchaser.

31.    Any benefit derived by any party comes at the expense of the Debtors'

estates and as such there is no basis for electing under the Postpetition Pipeline Option.

**Election Under the Pipeline Purchase Option is Not Warranted**

32.    Election under the Postpetition Private Label Sales Agreement would have required the Debtors to meet minimum purchase requirements and maintain minimum stock which it appears the Debtors cannot currently meet. *See* Postpetition Private Label Sales Agreement ¶ 4-5. The Debtors have sold substantially all of their business assets and might, therefore, be in violation of those covenants if they had elected under the Pipeline Purchase Option. It is beyond doubt that had the Purchaser taken an assignment of the Postpetition Private Label Sales Agreement, any administrative costs imposed by the agreement would be for their account and not the Debtors. Having refused to accept the administrative burdens of the Postpetition Private Label Sales Agreement, they are not now permitted by law to cherry pick the one benefit they want, the Pipeline Product. *L.R.S.C. Co. v. Rickel Home Centers (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) (holding an executory contract must be assumed in total).

33.    Election under the Pipeline Purchase Option for the benefit of Presstek would, in fact, deprive the estates of a refund of the money they paid to Mitsubishi and may saddle the estates with greater administrative liability.

34.    The estates should not be forced to bear the burden of these contracts and receive none of the benefits.

**Purchaser Could Not Have Required the Debtors to Exercise the Option**

35.    Regardless of the Purchase Price Option expiring by its own terms, the Purchaser could not have required the Debtors to exercise the Purchase Price Option.

36.    The mere dictation that the Debtors direct Mitsubishi to deliver the

A- 0583

Pipeline Product was not sufficient to exercise the Purchase Price Option.

37.     It neither created a legal right to the Pipeline Product for the Purchaser, nor did it create a legal basis for the Purchaser to seek such relief.

38.     The Purchaser had no legal basis to direct the Debtors to exercise their right to elect under the Pipeline Purchase Option.

39.     The Postpetition Private Label Sales Agreement was not assigned to the Purchaser and as such, the Purchaser may derive no benefit from it; an option exercise would be such a benefit.

**The Purchaser has No Rights to the Postpetition Private Label Sales Agreement**

40.     Any purported rights to the inventory that the Purchaser claims rights in are completely inconsistent with the Sale Order, which overrides inconsistent provisions of the Asset Purchase Agreement.

41.     Title to the Pipeline Product does not pass under the Postpetition Private Label Sales Agreement until the product is physically delivered to the Debtors, which has still not occurred.  Neither the Debtors nor the Purchaser held title at the time of the Sale. Mitsubishi held sole title to the Pipeline Product and their interest could not have been conveyed pursuant to a sale of the Debtors' assets.

42.     Moreover, the Purchaser clearly chose not to seek assignment of the Postpetition Private Label Sales Agreement, so it does not have any rights under that agreement.

43.     This was explicitly decreed in the Sale Order, which states:

> Notwithstanding any other provision of this Order, neither
> the . . . Private Label Sales Agreement, in each case
> between A.B. Dick and Mitsubishi Imaging (MPM), Inc.
> ("Mitsubishi") shall be deemed assumed or assumed and

A- 0584

assigned to Silver Pursuant to this Order. The Sale Debtors
reserve their rights to seek assumption and assignment in
the future. . . .

Sale Order at ¶ 9.

44.     The Purchaser believes that despite their decision not to take assignment

of the Postpetition Private Label Sales Agreement and the right to assume and assign that

contract being expressly reserved in the Sale Order for the Debtors in a motion pursuant

to section 365 of the Bankruptcy Code, that with a wave of their hand the Purchaser can

now reap the benefits of that contract without accepting any of the burdens or obligations

of performance under the Postpetition Private Label Sales Agreement.

45.     However, the refusal to accept the assignment of a contract forfeits one's

rights to receive the benefits derived thereunder. *See In re CellNet Data Systems, Inc.*,

277 B.R. 588 (D. Del. 2002). This is so even in the context of what is generally

described as a sale of all assets.

46.     In *CellNet*, the purchaser of the assets of a corporation who explicitly

excluded an executory contract, then attempted to obtain royalty payments due under that

contract. The purchaser in that case argued that it had obtained the right to the royalties

when it purchased the assets of the debtor, even though it chose not to assume the

contract under which the royalties would be paid. The District Court held that because

the purchaser chose not to accept the contract, it could not receive the benefits provided

under the contract it explicitly chose to discard. *Id.* at 595.

47.     The Purchaser chose not to seek assignment of the Postpetition Private

Label Sales Agreement and cannot receive the benefits of that contract under the holding

in *CellNet.*

564588v1                            9

**The Purchaser Cannot Take the Benefits of a Contract and Not its Liabilities**

48.    It is well settled law that a debtor cannot "cherry pick" benefits from an executory contract while discarding the burdens under that contract which it does not wish to shoulder. *L.R.S.C. Co. v. Rickel Home Centers (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).   A party may only assign contracts in total; the party may not pick and choose amongst individual benefits.

49.    The Purchaser requests this Court allow it to collect the benefit under the Postpetition Private Label Sales Agreement while not shouldering the associated burdens. This is in direct contravention of Third Circuit law.

50.    The Purchaser could not receive the Pipeline Product without accepting the related contractual burdens.  Furthermore, the Pipeline Purchase Option has expired and can no longer be exercised.

51.    The benefit accrued under the Refund provisions of the Postpetition Private Label Sales Agreement unequivocally belongs to the Debtors' estates.

**Including the Pipeline Product in the Working Capital Covenant is Not Relevant**

52.    The Purchaser argues in their motion that the Committee knew that the Pipeline Product was being transferred to the Purchaser as part of the Sale because the Pipeline Product was included in the working capital covenant that must have been met at the time of closing in order for the Sale to Close.

53.    Including the Pipeline Product in the working capital covenant has no legal significance in determining who has a right to specific property.

54.    Closing covenants tied to working capital do not transfer title to property.

55.    Working capital covenants merely establish a minimum level of

10

performance that a company must reach. They are as often waived as enforced. The assets being purchased may or may not include the accounts receivable or inventory used to measure the working capital. As with all the Purchasers' arguments, this one is a red herring.

56.     In the current case, the Pipeline Product which was used to test the health of the Debtors before closing was in fact purchased with borrowed funds that were repaid to Presstek at the closing. Not only did this covenant fail to transfer title the manner in which it was paid for and repaid establishes the bona fides of the estates' claim to the Refund.

### IV.  Relief Requested

57.     The Committee respectfully requests that this Court direct Mitsubishi to take appropriate steps to divest itself of the Pipeline Product and return to the estates the contract Refund as set forth in the Postpetition Private Label Sales Agreement.

A- 0587

WHEREFORE, the Committee respectfully requests that the Court enter an order

granting Mitsubishi's motion in favor of the Debtors' estates, ordering Mitsubishi to

return the Refund to the Debtors' Estates and granting the Committee such other and

further relief as this Court sees fit.

Dated: November 16, 2004
       Wilmington, Delaware

                                   THE BAYARD FIRM

                            By:    _____
                                   Jeffrey M. Schlerf (No. 3047)
                                   GianClaudio Finizio (No. 4253)
                                   222 Delaware Ave., Suite 900
                                   P.O. Box 25130
                                   Wilmington, Delaware 19899
                                   Tel: 302-655-5000

                                        -   and –

                                   MCGUIREWOODS, LLP
                                   Richard J. Mason, P.C.
                                   Michael M. Schmahl
                                   77 West Wacker Drive
                                   Suite 4100
                                   Chicago, Illinois 60601-1681
                                   Tel: 312-849-8100

                                        -   and –

                                   MCGUIREWOODS, LLP
                                   James P. Ricciardi
                                   James H. Joseph
                                   Shawn R. Fox
                                   1345 Avenue of the Americas
                                   Seventh Floor
                                   New York, New York 10105-0106
                                   Tel: 212-548-2100

# EXHIBIT A

A- 0589

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------x
In re                    :    Chapter 11
                         :
A.B. DICK COMPANY, *et al*    :    Case No. 04–12002 (JLP)
                         :
            Debtors.     :    Jointly Administered
---------------------------------------------------x

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b) AND (f) AND 365(f)
OF THE BANKRUPTCY CODE AND RULES 2002(a)(2), (c)(1), (k) AND (m),
6004 AND 6006 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE, APPROVING (1) THE SALE, PURSUANT TO THE ASSET PURCHASE
AGREEMENT DATED JULY 13, 2004, OF (a) SUBSTANTIALLY ALL OF THE
ASSETS OF THE A.B. DICK COMPANY AND THE A.B. DICK COMPANY OF
CANADA, LTD., AND (b) THE CAPITAL STOCK OF THE A.B. DICK U.K. LIMITED
TO SILVER ACQUISITIONS CORP., FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; AND (2) THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO SILVER ACQUISITIONS CORP.**

Came on for hearing (the "Hearing") on the 2nd and 3rd days of November, 2004,

the *Motion for Order (A) Authorizing Sale of Substantially All of the Assets of A.B Dick Company*

*and its Wholly Owned Subsidiaries Free and Clear of Liens, Claims and Encumbrances; (B)*

*Authorizing Assumption and Assignment of Certain Unexpired Leases and Executory Contracts;*

*and (C) Granting Related Relief* (the "Motion")[1] filed on July 22, 2004 by A.B Dick Company

("A.B Dick"), Paragon Corporate Holdings, Inc., Multigraphics LLC, and Interactive Media

Group, Inc. (collectively, the "Debtors"), the debtors and debtors in possession in the above-

captioned jointly administered chapter 11 cases; the Court having reviewed the Motion and all

objections thereto and having heard the statements in support of the objections and in support of

the relief requested in the Motion at the Hearing; and upon the Motion and the record of the

---

[1]      All capitalized terms not otherwise defined herein shall have the meanings ascribed to
them in the Motion.

#103423



Hearing and all other proceedings had before the Court; after due deliberation and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Proper, timely, adequate, and sufficient notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities in accordance with sections 102, 105(a), 363, and 365 of Title 11 (the "Bankruptcy Code") of the United States Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in compliance with the Bidding Procedures Order, including, but not limited to the following parties in interest:  (i) the United States Trustee for the District of Delaware, (ii) the attorneys for KeyBank National Association as administrative agent under the DIP Credit Agreement, (iii) the attorneys for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) the attorneys for the MHR Entities, (v) the attorneys for Presstek, Inc. ("Presstek") and Silver Acquisitions Corp. ("Silver"), (vi) all parties that have submitted written requests to the Debtors to purchase the Assets within two months prior to the date hereof, (vii) all parties that are known to assert a security interest, lien, or claim in the Assets, (viii) the Internal Revenue Service, (ix) parties to the Assumed Seller Contracts, (x) all applicable state and local taxing authorities and (xi) all creditors listed in the schedules filed by A B Dick.  In addition, in compliance with the terms of the Bidding Procedures Order, notice of

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

the Motion, the Bidding Procedures, and Sale was published in a printing industry trade journal and also published in the national edition of the WALL STREET JOURNAL on September 20, 2004.

    C.    All objections to the relief requested in the Motion were either resolved prior to or at the Hearing or should be overruled.

    D.    A prompt closing of the transactions contemplated by the Asset Purchase Agreement, dated July 13, 2004, among Paragon Corporate Holdings, Inc. ("Paragon" or "Parent"), A.B. Dick, A.B. Dick Company of Canada, Ltd., a Canada corporation and wholly-owned subsidiary of A.B. Dick ("Canada Sub"), and Interactive Media Group, Inc., a wholly owned subsidiary of Parent ("IMG" and together with A.B. Dick, the "Sale Debtors"), and Presstek and Silver, as guarantor and purchaser respectively as amended by the First and Second Amendments to such Asset Purchase Agreement and as further amended at the Auction and at the Hearing (as amended, the "Asset Purchase Agreement") is essential and is in the best interests of Sale Debtors and their estates. The terms of the Asset Purchase Agreement are the best terms that have been offered for sale of the Assets (as such term is defined in the Asset Purchase Agreement)

    E.    Upon the execution, delivery, and closing of the Asset Purchase Agreement, the Assets to be sold and the interests to be assigned will have been acquired by Silver in good faith and as the result of arm's length negotiations.

    F.    No consents or approvals are required for the Sale Debtors to consummate the sale of the Assets other than the consent and approval of this Court and those set forth in the Asset Purchase Agreement. Neither the execution of the Asset Purchase Agreement nor the consummation of the sale of the Assets in accordance with its terms will constitute a violation of

3



A- 0592

any provision of any of Sale Debtors' organizational documents or any other instrument, law, regulation or ordinance by which the Sale Debtors are bound.

       G.    The Sale Debtors are the legal and equitable owner of the Assets (other than the Assets owned by Canada Sub) and, upon entry of this Sale Order, the Sale Debtors will have full corporate power and authority to consummate the sale contemplated by the Asset Purchase Agreement  The Asset Purchase Agreement and the sale have been duly and validly authorized by all necessary corporate action required of each of the Parent and the Sale Debtors.

       H.    This Order and the consummation of the transactions contemplated by the Asset Purchase Agreement are supported by good business reasons, and will serve the best interests of the Sale Debtors, their estates and their creditors by maximizing the values to be obtained from the Assets.

       I.    The Asset Purchase Agreement was negotiated, proposed, and entered into . by the Parent and the Sale Debtors, on one hand, and Presstek and Silver, on the other hand, without collusion, in good faith, and from arm's-length bargaining positions.  Neither Presstek nor Silver is an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code   None of the Debtors, Presstek, or Silver have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code

       J.    Silver is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

       K.    The consideration to be provided by Silver pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy

4



Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform

Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state whose

law is applicable to the transactions contemplated by the Asset Purchase Agreement.

        L.     The Asset Purchase Agreement was not entered into for the purpose of

hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the

United States, any state, territory, possession, or the District of Columbia.

        M.     The consummation of the sale of the Assets pursuant to the Asset Purchase

Agreement will be a legal, valid, and effective sale of the Assets to Silver, and vests or will vest

Silver with all of the Sale Debtors' right, title, and interest in and to the Assets free and clear of

liens, claims, (including, but not limited to any and all "claims" as defined in section 101(5) of

the Bankruptcy Code), defenses to claims, including rights of setoff and recoupments, security

interests, pledges, hypothecations, encumbrances or other interests, and any and all rights and

claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute

or otherwise and whether arising before, on or after the date on which these chapter 11 cases

were commenced, whether known or unknown, including liens of any of the Debtors ' creditors,

vendors, suppliers, employees, lessors or any other third party (collectively "Liens") in

accordance with section 363(f) of the Bankruptcy Code because one or more of the standards set

forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied  All parties with Liens

against the Assets, if any, who did not object to the Motion and the relief requested therein, or

who withdrew their objections to the Motion, are deemed to have consented pursuant to section

363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against Silver,

Silver's affiliates or any agent of the foregoing to recover any claim which such person or entity

has solely against the Sale Debtors or any of their wholly owned subsidiaries  Failure to sell the

5



Assets free and clear of Liens would be substantially less benefit to, and would adversely affect, the Sale Debtors' bankruptcy estates

N.    Brokers were not involved in consummating the Sale. Therefore, except as otherwise provided by prior Order of this Court, no agent, broker, person or firm acting or purporting to act on behalf of Parent, the Sale Debtors, Silver, or Presstek is or will be entitled to any commission, broker's fee or finder's fee from any of the parties to the Asset Purchase Agreement or any other person respecting the Sale.

O.    The Asset Purchase Agreement is a valid and binding contract between the Paragon, as parent, and A.B.Dick, Canada Sub and IMG, as sellers, and Presstek and Silver, as guarantor and purchaser, and is enforceable according to its terms.

P.    Unless an objection has been timely filed with the Bankruptcy Court, the amounts set forth on (i) Exhibits A – C to the SCHEDULES OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND RELATED CURE AMOUNTS OF THE DEBTORS AS OF SEPTEMBER 29, 2004 AND RESERVATION OF RIGHTS, dated October 1, 2004, and (ii) Exhibit D to the SUPPLEMENT TO SCHEDULES OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND RELATED CURE AMOUNTS OF THE DEBTORS AS OF SEPTEMBER 29, 2004 AND RESERVATION OF RIGHTS, dated October 6, 2004 (collectively, the "Schedule of Cure Amounts"), or if disputed, the amounts agreed to in writing by the objecting party and the Sale Debtors, are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code). There are no defaults under the Assumed Seller Contracts except as specified in the Schedule of Cure Amounts. Any anti-assignment provision

6

A- 0595

of any of the Assumed Seller Contracts is unenforceable pursuant to section 365(e) and (f) of the Bankruptcy Code.

(i)    all Reseller Agreements, Domestic Distribution Agreements, International Distributor Agreements, Customer Service Agreements, including bundler agreements and agreements with governmental entities, and Material Confidentiality Agreements, each as set forth in the Schedule of Cure Amounts;

(ii)    all of the unexpired real estate leases listed in Exhibit B to the Schedule of Cure Amounts, except the real property leases on property located in Niles, IL, and, Rochester, NY;

(iii)    all of the unexpired capital leases listed in Exhibit C to the Schedule of Cure Amounts; and

(iv)    all of the unexpired leases listed in Exhibit D to the Schedule of Cure Amounts.

Q.    Representatives of the Sale Debtors and Presstek and Silver made the following representations with respect to the assumption and assignment of executory contracts on the record at the auction on November 1, 2004:

> MR. SCAFIDE:  The second item is to remove from the estate the responsibility of curing all contracts with the exception of certain leases that have been provided by the company with a total liability not to exceed $500,000.  That is to say that only $500,000 will remain with the estate on those obligations.
> . . .
>
> MR. POLLACK:  The only clarifying comment is that the executory contracts are still being assumed with Presstek being responsible for the cures, other than the $500,000 Mr. Scafide mentioned.
>
> MR. SCAFIDE:  There may be some contracts that are not assigned But that won't affect the liability of the estate.

A copy of the Auction Transcript is attached hereto.

7



R.    Presstek and Silver agreed, at the auction held on Monday November 1,
2004, and also stated on record at the Hearing, that the Sale Debtors' liability for cure obligations
under the Sale Debtors (a) unexpired real estate leases (excluding Rochester, NY and Niles, IL.),
(b) unexpired capital leases and (c) unexpired operating leases listed on the Schedule of Cure
Amounts (collectively, the "Assumed Leases"), shall not exceed $500,000.  Silver shall be liable
for payment of all cure obligations with respect to the Assumed Leases in excess of $500,000.

S.    The Assumed Seller Contracts do not include any employment contracts.

T.    Adequate assurance of future performance has been demonstrated by or on
behalf of Presstek and Silver with respect to the Assumed Seller Contracts.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED THAT:

1.    The Motion is granted and approved in all respects as provided herein
(other than with respect to matters already addressed by the Bidding Procedures Order) and all
objections thereto, to the extent not withdrawn prior to or at the Hearing, are hereby overruled.

2.    Pursuant to sections 363 and 365 of the Bankruptcy Code, the sale,
conveyance, and assignment of the Assets, including the Sale Debtors' assignment of the
Assumed Seller Contracts, pursuant to the Asset Purchase Agreement (the "Sale") is approved,
and the Sale Debtors are authorized and directed to execute any and all documents, instruments
and papers and to take all actions necessary and appropriate to effectuate, implement and
consummate the transactions contemplated by the Asset Purchase Agreement in consideration of
the purchase price specified therein, including assigning and transferring to Silver all of the Sale
Debtors' right, title and interest (including common law rights) in and to all of the Sale Debtors'
intangible property included among the Assets except as otherwise explicitly provided by the

8

Asset Purchase Agreement. Without limiting the foregoing, the Sale Debtors are authorized and directed to close and consummate the Asset Purchase Agreement and all other agreements and documents related to and contemplated thereby (collectively, the "Disposition Documents"), which agreements and documents hereby are authorized and approved in all respects

3.    The transfers of the Assets by the Sale Debtors to Silver are legal, valid and effective transfers and shall vest Silver with all right, title and interest of the Sale Debtors in and to the Assets pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Liens. Any and all such Liens shall attach to the proceeds of the Sale, with the same priority, validity, force and effect as they now have against the Assets.

4.    The sale of the Sale Debtors' Assets pursuant to this Order and the Disposition Documents shall be binding upon Paragon, the Sale Debtors, Silver, all creditors, and shareholders of Paragon and the Sale Debtors, all of the parties to the Assumed Seller Contracts, all persons having or asserting a claim against, or an interest in Paragon, the Sale Debtors, or the Assets, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Sale Debtors to sell, assign and convey the Assets or that seek to enjoin any such sale, assignment or conveyance

5.    Any party having the right to consent to the assumption or assignment of the Assumed Seller Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code. The hearing on all Cure Claims objections filed with the Court, to the extent not resolved prior to or at the Hearing, are hereby continued to the December omnibus hearing date in these chapter 11 cases.

9

6.     Notwithstanding any provisions of this Order to the contrary, the assumption and assignment of executory contracts shall be governed by the following statements of representatives of the Debtors and Presstek and Silver made on the record at the auction on November 1, 2004:

> MR. SCAFIDE:  The second item is to remove from the estate the responsibility of curing all contracts with the exception of certain leases that have been provided by the company with a total liability not to exceed $500,000.  That is to say that only $500,000 will remain with the estate on those obligations.
> ..

> MR. POLLACK:  The only clarifying comment is that the executory contracts are still being assumed with Presstek being responsible for the cures, other than the $500,000 Mr. Scafide mentioned.

> MR. SCAFIDE:  There may be some contracts that are not assigned. But that won't affect the liability of the estate.

7.     The Sale Debtors, Silver, and/or Presstek (in their sole and absolute discretion) may add or remove executory contracts or unexpired leases from the list of Assumed Seller Contracts up until Closing of the Sale.  In the event (a) one or more executory contracts or unexpired leases is added or removed after the entry of this Order, but before the Closing, (b) Silver and/or Presstek designate an executory contract or unexpired lease for assumption and assignment that was not listed on the Schedule of Cure Amounts or (c) a non-Debtor party to an Assumed Seller Contract did not receive adequate notice, the Sale Debtors shall file an amended Schedule of Cure Amounts and serve notice of added or removed executory contracts or unexpired leases on the non-Debtor parties to such executory contracts or unexpired leases.  The affected non-Debtor parties shall have 10 days from the date of service of such notice of amended Schedule of Cure Amounts to file and serve an objection to the assumption and assignment and/or cure obligation stated therein; failure by such non-Debtor party to object to



10



such assumption and assignment shall be deemed a waiver of any and all objections thereto. Nothing shall require Silver and/or Presstek without its consent.

      8.     The Sale Debtors' liability for cure obligations under the Assumed Leases shall not exceed $500,000. Silver shall be liable for payment of all cure obligations with respect to the Assumed Leases in excess of $500,000

      9.     Notwithstanding any other provision of this Order, neither the Private Label Sales Agreement dated October 1, 2002 nor the Private Label Sales Agreement dated August, 2004 (the "Postpetition Agreement"), in each case between A.B Dick and Mitsubishi Imaging (MPM), Inc. ("Mitsubishi") shall be deemed assumed or assumed and assigned to Silver pursuant to this Order. The Sale Debtors reserve their rights to seek assumption and assignment in the future. In addition, the sale approved hereby is not free and clear of (a) any of the rights of Mitsubishi under the Resale License created under and described and defined in the Postpetition Agreement or (b) any set-off or recoupment rights of Mitsubishi.

      10.    Neither Presstek nor Silver has acquired any liabilities of the Sale Debtors other than the Assumed Liabilities, and all persons and/or entities are hereby permanently enjoined and restrained from asserting or prosecuting any claim against Presstek, Silver or their respective affiliates or agents, other than claims on account of Assumed Liabilities, to recover on any claim such person had, has or may have against the Sale Debtors, their estates or the Assets relating to the ownership, use and/or operation of the Assets prior to the effective date of the Sale.

      11.    Except for obligations of the Sale Debtors to pay the cure amounts as set forth in the Schedule of Cure Amounts, or any amendments thereto, each non-Debtor party to an Assumed Seller Contract is hereby forever barred, estopped, and permanently enjoined from

11

asserting against the Sale Debtors, Presstek, and/or Silver any defaults or additional amounts existing as of the Closing whether disclosed or undisclosed, whether known or unknown, and such non-Debtor parties are also forever barred, estopped, and permanently enjoined from asserting against Presstek and/or Silver any counterclaim, defense, setoff, or any other claim or defense assertable against the Sale Debtors.

12    To the extent permitted by law, except for Assumed Liabilities, none of Presstek, Silver or any of their respective affiliates shall be liable, either directly or indirectly, as successor, transferee or otherwise, for any liabilities of the Sale Debtors or any of their affiliates (whether under federal or state law or otherwise) as a result of the sale of the Assets.

13.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to Silver or any of its affiliates or designees as a result of Sale Debtors' assumption or assignment to Silver of the Assumed Seller Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between the Sale Debtors or any of their affiliates and any counterparty to any Assumed Seller Contract, and the Assumed Seller Contracts, upon assignment to Silver, shall be deemed valid and binding and in full force and effect in accordance with their terms, and any anti-assignment provision of any of the Assumed Seller Contracts is unenforceable pursuant to section 365(e) and (f) of the Bankruptcy Code. There are no defaults under the Assumed Seller Contracts except as specified in the Schedule of Cure Amounts.

14.    The transactions contemplated by the Asset Purchase Agreement have been undertaken by Presstek and Silver and Paragon and the Sale Debtors at arm's-length and without collusion, and Presstek and Silver will acquire the Assets pursuant to the Asset Purchase Agreement and the Disposition Documents, in good faith within the meaning of section 363(m)

12



A- 0601

of the Bankruptcy Code, and Presstek and Silver are entitled to all of the protections in accordance therewith  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions contemplated by the Asset Purchase Agreement shall not affect the validity of the sale of the Assets, unless such authorization is duly stayed pending such appeal

15.    The consideration provided by Silver for the Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

16    The so-called "bulk-sale" laws in all applicable jurisdictions in the United States are waived or inapplicable as to the transactions contemplated by the Asset Purchase Agreement, and such transactions are hereby deemed to be under or in contemplation of a plan to be confirmed under section 1129 of the Bankruptcy Code

17.    The provisions of this Order are non-severable and mutually dependent

18.    This Order and all provisions of the Disposition Documents shall be binding upon any successors and assigns of Paragon and the Sale Debtors, including without limitation, any trustee, receiver, or examiner in these chapter 11 cases or in any superseding proceedings under chapter 7 of the Bankruptcy Code.

19.    Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or any other order entered in these chapter 11 cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement, to the extent modified by this Order, or the terms of this Order.

20    The Asset Purchase Agreement, the Disposition Documents, or any other instruments delivered in connection with the consummation of the transactions contemplated by

13



the Asset Purchase Agreement may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

21.    The failure specifically to include any particular provisions of the Asset Purchase Agreement or the Disposition Documents in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Asset Purchase Agreement or the Disposition Documents be authorized and approved in their entirety.

22.    To the extent of any inconsistency between the provisions of the Asset Purchase Agreement, any documents executed in connection therewith, and this Order, the provisions contained herein shall govern.

23.    This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6006(d), 7062 or otherwise.

24.    To the extent not withdrawn, or rendered moot by the provisions contained herein, all objections to the Motion, if any, are overruled.

25.    The Bankruptcy Court shall retain exclusive jurisdiction to interpret, construe and enforce the provisions of the Asset Purchase Agreement and the Order in all respects and, further, to hear and determine any and all disputes between the Paragon, the Sale Debtors and/or Presstek and Silver, as the case may be, and any non-seller party to, among other things, any Assumed Seller Contracts, concerning inter alia, the Sale Debtors' assignment thereof to Silver under the Asset Purchase Agreement of any Assets, and any claims against the Sale Debtors arising under any agreements relating to Excluded Liabilities and any dispute

14

between Silver and the Sale Debtors as to their respective obligations with respect to any asset or liability of or claim against the Sale Debtors or otherwise arising hereunder.

Dated: November 3, 2004
       Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE

15



EXHIBIT "A"



1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                          )
                                )
A.B. DICK COMPANY, et al.,      ) Case No. 04-12002(CGC)
                                )
        Debtors.                )

Jaspan Schlesinger Hoffman LLP
913 Market Street - 12th Floor
Wilmington, Delaware

Monday, November 1, 2004
4:50 p.m.

-- TRANSCRIPT OF AUCTION PROCEEDINGS --

WILCOX & FETZER
1330 King Street - Wilmington, Delaware  19801
(302) 655-0477

2

1    MR. SCHWARTZ:  This auction proceeding is

2    commenced pursuant to amended order, A, approving bidding

3    procedures for the sale of substantially all of the

4    assets of ABD Company and its wholly-owned subsidiaries;

5    B, authorizing payment of an expense reimbursement and

6    termination fee; C, setting sale hearing date; and, D,

7    approving form of notice that was entered by the Court on

8    or about September 15th, 2004.

9          For the record, I am H. Jeffrey Schwartz

10   from Benesch, Friedlander, Coplan & Aronoff, counsel --

11         A VOICE:  Could you speak up?  It's hard to

12   hear you on the conference bridge.

13         MR. SCHWARTZ:  Okay.  I'll get closer to the

14   speaker.

15         A VOICE:  Thank you.

16         MR. SCHWARTZ:  H. Jeffrey Schwartz from

17   Benesch, Friedlander, Coplan & Aronoff, counsel to the

18   debtors-in-possession.

19         Also here from Benesch Friedlander are

20   Mark Phillips.  And participating telephonically from

21   Benesch Friedlander are Greg Gale and -- anyone else,

22   Greg?

23         MR. GALE:  John Gambaccini and

24   Michael Zaverton.

3

1          MR. SCHWARTZ:  And also on behalf of the

2  debtors-in-possession, we have the corporate secretary,

3  Jeffrey Herden, H-E-R-D-E-N.

4          We have from Candlewood Partners

5  Glenn Pollack and Lynn, L-Y-N-N, Carpenter.

6          We have the chief restructuring officer,

7  Stephen Gray, from The Recovery Group and John Calabrese

8  from The Recovery Group.

9          And that's everybody on behalf of the

10  debtors --

11          A VOICE:  Hello?  You're still drifting in

12  and out.  I'm sorry.

13          MR. SCHWARTZ:  Okay.  That's everyone for

14  the debtors-in-possession.

15          For the creditors' committee, Jim you want

16  to identify yourself?

17          MR. RICCIARDI:  James Ricciardi of McGuire

18  Woods.

19          MR. SCHLERF:  Also, Jeffrey Schlerf from

20  The Bayard Firm.

21          MR. RICCIARDI:  Jeffrey Schlerf of

22  The Bayard Firm also with us.

23          MR. SCHWARTZ:  And for KeyBank?

24          MR. FOLLAND:  This is Robert Folland of

4

1    Thompson Bine on behalf of secured creditor KeyBank, N.A.

2          MR. SCHWARTZ:  Okay.  And on behalf of

3    Presstek, we have present...

4          MR. HOOSA:  Hoosa E. Hoosa.

5          MR. SCHWARTZ:  And we have as well. .

6          MR. SCAFIDE:  James Scafide, corporate

7    counsel.

8          MR. SCHWARTZ:  And we have participating

9    telephonically on behalf of Presstek two gentlemen from

10   the McDermott, Will & Emery firm.

11         Gentlemen, if you could, please, identify

12   yourselves for the record?

13         MR. EGAN:  John Egan.

14         MR. SLATTERY:  Lawrence Slattery.  And also

15   with me is Gary Ravert, R-A-V-E-R-T.

16         MR. GOLDSMITH:  And also Jim Goldsmith.

17         MR. SCHWARTZ:  That's it on behalf of the

18   McDermott Will attorneys participating telephonically?

19         A VOICE:  Yes.

20         MR. SCHWARTZ:  So we have also...

21         MS. KOWALCZYK:  Noelle Kowalczyk on behalf

22   of the MHR entities.

23         MR. SCHWARTZ:  Okay.  And anyone else on

24   behalf of MHR entities participating?

5

1              MS. KOWALCZYK:  No.

2              MR. SCHWARTZ:  Alan, do you want to identify

3    the Comvest parties?

4              MR. KADISH:  Alan Kadish, K-A-D-I-S-H,

5    Greenberg Traurig in New York.

6              On the line also is a principal of Comvest,

7    Carl Kleidman.

8              Carl, why don't you identify yourself by

9    voice?

10             MR. KLEIDMAN:  Hi, everyone.  It's

11   Carl Kleidman.  Last name is K-L-E-I-D-M-A-N.  And I'm

12   one of the partners at Comvest.

13             MR. SCHWARTZ:  Okay.  Is there anyone

14   present in the room or present telephonically who has not

15   identified him or herself?

16             MR. McCARTHY:  Yes.  Michael McCarthy,

17   Presstek.

18             MR. SCHWARTZ:  Thank you.

19             Okay.  At this time, the debtors understand

20   that Presstek has improved its bid.  So at this time, I

21   would ask a representative of Presstek to read into the

22   record with some specificity --

23             MS. KOWALCZYK:  Jeffrey, before we do that,

24   can I put a statement on the record?

A- 0610

6

1        MR. SCHWARTZ:  Sure.

2        MS. KOWALCZYK:  Thank you.

3        This is Noelle Kowalczyk on behalf of

4    MHR Capital Partners, MHR Institutional Partners, MHRM LP

5    and MHR Fund Management.

6        I would like to state on the record that the

7    MHR entities oppose the board's decision to proceed with

8    the auction of ABD's assets today.  The MHR entities

9    believe that to do so will result in ABD's assets being

10    purchased by Presstek under the terms of the July 13th,

11    2004 asset purchase agreement.

12        As many of you know, the asset purchase

13    agreement intentionally releases and forever extinguishes

14    the only significant asset available for the satisfaction

15    of the unsecured creditors' claims; that is, the debtors'

16    breach of contract action against Presstek under the

17    terms of the June 16th, 2004 stock purchase and escrow

18    agreements.

19        In light of this fact, the MHR entities

20    believe that to proceed is in blatant violation of ABD's

21    and Paragon's fiduciary obligations to the creditors.

22        As you know, offers to purchase ABD's assets

23    have been received from two additional bidders:  Comvest

24    and Harbor.  Our analyses indicate that neither the

7

1   debtors nor debtors' secured creditors will suffer any

2   prejudice from adjourning the auction for a reasonable

3   period of time for negotiation with Comvest and/or

4   Harbor.

5          The MHR entities remind each and every one

6   of you that each board member owes a fiduciary duty to

7   seek and approve a plan or sale that would achieve the

8   greatest value for the debtors' estates and, thus,

9   maximize the value ultimately distributed among the

10  debtors' creditors.

11         A sale to Presstek in no way furthers this

12  goal.  And the MHR entities urge you to reconsider your

13  decision to proceed with the auction today.

14         Thank you.

15         MR. SCHWARTZ:  Thank you for your statement.

16         For the record, the debtors-in-possession

17  disagree with that statement in general and in each of

18  its particulars, and will not state anything further.

19         At this point, the debtors-in-possession

20  request that Presstek put into the record with

21  specificity the improvements that it is offering the

22  estate with respect to the stalkinghorse bid as defined

23  in the order.

24         MR. SCAFIDE:  This is Jim Scafide for

9

1    Presstek   There are three components to the modification

2    of our bid.  The first is that a closing be effective as

3    of 11:59 Friday, November 5th.  That is to coincide with

4    payroll.

5           The second item is to remove from the estate

6    the responsibility of curing all contracts, with the

7    exception of certain leases that have been provided by

8    the company with a total liability not to exceed

9    $500,000.  That is to say that only $500,000 will remain

10   with the estate in those obligations.

11          And the third is, as identified by the

12   debtor-in-possession, the medical trail liabilities for

13   current employees will be assumed by Presstek as well.

14          MS. KOWALCZYK:  What's the dollar value on

15   that?

16          MR. SCAFIDE:  As listed -- Glenn, what was

17   that document called?  What is this document called?

18          MR. POLLACK:  Presstek bid analysis.

19          MR. SCAFIDE:  The Presstek bid analysis

20   document estimate --

21          MR. SCHWARTZ:  Which has been provided to

22   KHR and the committee and Koy on Friday, last Friday,

23   October 29th.

24          MR. POLLACK:  1.65 million.

9

1          MR. SCAFIDE:  Thank you.

2          MR. SCHWARTZ:  We're going to go off the

3    record for one second.

4          (Discussion was held off the record.)

5          MR. SCAFIDE:  Apparently there's a fourth

6    item.  I misspoke.  There's a fourth item.  Inclusion of

7    prepaid inventory deposits in full in the calculation of

8    working capital required in the net working capital test

9    included in the APA.

10         MR. SCHWARTZ:  Off the record for a second.

11         (Discussion was held off the record.)

12         MR. SCHWARTZ:  Are there any other items --

13   I'm asking Mr. Pollack.  Any other items that the

14   debtors-in-possession understand to be included in the

15   improvements made by Presstek to the stalkinghorse bid?

16         MR. POLLACK:  The only clarifying comment is

17   that the executory contracts are still to be assumed and

18   assigned with Presstek being responsible for the cures,

19   other than the 500,000 Mr. Scafide mentioned.

20         MR. SCAFIDE:  There may be some contracts

21   that are not assigned.  But that won't affect the

22   liability of the estate.

23         MR. POLLACK:  Okay.  That's it.

24         MR. SCHWARTZ:  So for the record, just --

10

1    for example, with respect to the Oji contract -- what's

2    the full name of that contract?

3        MR. GRAY:  Oji, O-J-I.

4        You do understand that the Oji contract --

5    Oji has denied the extension of exclusivity in that

6    contract?

7        MR. SCHWARTZ:  And that it's Presstek's sole

8    responsibility any payment thereunder...

9        MR. SCAFIDE:  Yes.

10       MR. SCHWARTZ:  Let the record reflect

11   Mr. Scafide's acceptance of that.

12       MR. GRAY:  We can't assume and assign that.

13       MR. SCHWARTZ:  That's understood.

14       MR. GRAY:  Then we have the accounting and

15   foreign consent issues for closing.  We ought to have

16   that on the record.

17       There was the outstanding issue as to

18   whether the accounting -- the required accounting by

19   Ernst & Young and Troy & Orleans that are required in the

20   APA ---

21       MR. SCHWARTZ:  The financial review --

22       MR. GRAY:  -- for closing financial review

23   of the '03 numbers and the -- I'm sorry.  Finalizing the

24   '03 audit and the review of the 9/30/04 numbers as to

11

1   whether or not that can be accomplished by Friday and

2   whether you will close with that not accomplished on

3   Friday.

4           MR. SCHWARTZ:  So the question is, are you

5   waiving that requirement under the APA to effect a

6   closing on Friday?

7           MR. SCAFIDE:  One moment.

8           MR. POLLACK:  Excuse me.  While you're

9   considering that, the other issue is that all of the

10  foreign -- it's unlikely that all of the foreign

11  consents --

12          MR. SCAFIDE:  We think we worked through

13  that.

14          MR. POLLACK:  Okay.

15          MR. SCHWARTZ:  Off the record.

16          (Discussion was held off the record.)

17          MR. SCAFIDE:  Could you restate the

18  question?

19          MR. SCHWARTZ:  The question is with regard

20  to the financial review required under the APA, is

21  Presstek waiving that in connection with a November 5th

22  or thereabouts closing?

23          MR. SCAFIDE:  We're willing to make this a

24  post closing condition provided we're given adequate

12

1   assurances that it will be provided within a reasonable

2   amount of time.

3           MR. MOOSA:  We had a discussion with the CFO

4   at the debtor company, and it seems to me that it should

5   not be a problem in terms of getting the financial --

6           A VOICE:  Gentlemen, the folks in Delaware,

7   if you guys don't talk directly into the bridge, those of

8   us on the call can't hear.

9           MR. MOOSA:  Our discussion with the CFO at

10  A.B. Dick indicates that they're likely to get these

11  financials in place by Friday.  If it's not, then we

12  would revert to --

13          MR. SCHWARTZ:  So that for purposes of the

14  auction, is it correct to state that Presstek is willing

15  to waive the condition that the financial review be

16  completed in a satisfactory manner on or about November

17  5th provided that on or about November 5th it receives

18  reasonable assurances that such a review will be

19  completed in a timely manner?

20          MR. SCAFIDE:  Reasonable amount of time,

21  yes.

22          MR. GRAY:  Just to be clear, the '04 review

23  and the completion of the '04 audit?

24          MR. MOOSA:  Correct.

13

1           MR. NERDEN:  '03 audit.

2           MR. SCHWARTZ:  Thank you.

3           Mr. Pollack, any further...

4           MR. POLLACK:  Foreign consents.

5           MR. GRAY:  Or any consents.  Because we

6       might not have --

7           MR. SCAFIDE:  Yeah, I think we'll use the

8       same mechanism.  To the extent that they're non-material,

9       we'll certainly waive them.  We have to go through the

10      contracts and make a list.  We're doing that currently.

11      But I don't expect --

12          MR. POLLACK:  So could you possibly repeat

13      the same language and apply it to this?

14          MR. SCAFIDE:  To the extent that they're not

15      provided on or about November 5th, we would waive them,

16      provided that on or about November 5th we're provided

17      reasonable assurances that they'll be provided within a

18      reasonable amount of time.

19          MR. SCHWARTZ:  Well put.  Thank you.

20          MR. POLLACK:  Thank you.

21          MR. SCHWARTZ:  Does the committee wish to

22      make a statement at this time?

23          MR. RICCIARDI:  The committee has a question

24      at this time.  You said that the contracts which you

14

1   would be responsible for the cure of, that you would make

2   a decision about those contracts.  And you would not

3   assume them all, but you would pay the cure costs above

4   500,000 on the ones you did assume.  For how long are you

5   going to have to make that decision?  Because

6   obviously --

7               MR. SCAFIDE:  Tomorrow.

8               MR. RICCIARDI:  Okay.

9               MR. SCAFIDE:  By the close of business

10  tomorrow we'll have the list.

11              A VOICE:  Whoever is speaking, you're

12  cutting out.

13              MR. SCAFIDE:  By the close of business

14  tomorrow.

15              MR. SCHWARTZ:  Jim, is that --

16              MR. RICCIARDI:  Yes, because I wanted to

17  make sure we weren't going to have --

18              MR. SCHWARTZ:  I understand.  I want to make

19  sure the committee has a full and fair opportunity to ask

20  questions.

21              Mr. Folland, on behalf of KeyBank, do you

22  have any questions?

23              MR. FOLLAND:  I do not have any questions at

24  this time.  Thank you, gentlemen.

15

1        MS. KOWALCZYK:  No questions.

2        MR. SCHWARTZ:  Ms. Kowalczyk has no

3    questions.

4        Anybody on the phone have questions for

5    Presstek?

6        Any party in interest have questions for

7    Presstek?

8        MR. GALE:  This is Greg Gale.  In speaking

9    with Jim Goldsmith and John Egan earlier today, it was

10   mentioned to me that Presstek may require a transition

11   services agreement.  This is the first time that at least

12   I had heard the transition services agreement.  And I was

13   wondering if Presstek could comment on what they need?

14   And I want to make sure that there's no financial

15   commitment that is required of the estate after close.

16       MR. EGAN:  Greg, this is John Egan.  I

17   believe that's actually in the APA.

18       MR. SCHWARTZ:  So to the extent that a

19   transition services agreement is required, it is as

20   provided for in the APA and Presstek stands on that and

21   does not modify or amend that in any respect.

22       MR. SCAFIDE:  That is correct.

23       MR. SCHWARTZ:  At this time, then, I would

24   ask does any party wish to, likewise, modify its

16

1   indication of interest, expression of interest or the

2   like?

3           And I'm referring directly to the

4   representatives of Comvest and if there's a

5   representative of Harbor on the phone. I'm also

6   directing that to the MHR entities' representative.

7           Since you're in the room, Ms. Kowalczyk,

8   would you care to comment?

9           MS. KOWALCZYK:  I think the statement I gave

10  at the beginning of the auction sets forth our position

11  adequately.

12          MR. SCHWARTZ:  So you're resting on that?

13          MS. KOWALCZYK:  Yes.

14          MR. SCHWARTZ:  Thank you.

15          Mr. Kadish, do you have any modification,

16  improvement on the indication of interest provided by

17  Comvest to the debtors-in-possession?

18          MR. KADISH:  I think for this moment we have

19  no change in our position.  I'll let Carl speak behind me

20  if he disagrees.  But I would hold open our expression of

21  interest notwithstanding the announcements made today.

22          Carl.

23          MR. KLEIDMAN:  I think that's correct.  You

24  know, I'd like to go on the record we are still very



17

1    interested in presenting a bid to the company. We stand

2    ready and committed to move forward as expeditiously as

3    we can within the time frame that we had laid out, and to

4    be in a position to solidify our bid by the end of next

5    week.

6         MR. SCHWARTZ:  On behalf of the

7    debtors-in-possession, we thank you for that statement.

8         Any other party wishing to make -- I don't

9    know -- a statement on improving the bid or otherwise?

10        Is there a representative from Harbor on the

11   phone?

12        Hearing none --

13        MR. EGAN:  Excuse me.  This is John Egan

14   Jim Scafide?

15        MR. SCAFIDE:  Yes.

16        MR. EGAN:  On the question of transition

17   services, I believe most of the stuff relating to office

18   space and leases is covered by the APA.  I think, as an

19   element of closing early on Friday, the one other aspect

20   was, if needed, I think I wanted to pursue getting

21   payroll and accounting services, but we would pay the

22   estate for those services at cost; is that correct?

23        MR. SCAFIDE:  That's correct.

24        MR. SCHWARTZ:  Thank you for that



18

1   clarification.

2          MR. SCAFIDE:  Just for purposes of

3   clarification, in addition to that, there may be other

4   personnel-related services that would also be paid to the

5   estate at cost.  We don't expect the estate to assume any

6   costs, any liabilities associated with the transition

7   services agreement.

8          MR. SCHWARTZ:  So, please, correct me if I'm

9   misstating this, but Presstek in its improvements to the

10   stalkinghorse bid is not imposing, does not purport to

11   impose any financial obligations on the

12   debtors-in-possession or their estates; is that correct?

13          MR. SCAFIDE:  That's correct.

14          MR. SCHWARTZ:  Thank you.

15          On behalf of the debtors-in-possession, I

16   hereby declare the Presstek bid as improved on the record

17   to constitute the prevailing bid as defined in paragraph

18   Romanette four on page 6 of the order -- the order being

19   a defined term of the order under which I convened this

20   auction.  And I hereby designate on behalf of

21   debtors-in-possession Presstek to be the prevailing

22   bidder.

23          And I state for the record that the

24   debtors-in-possession will proceed with the sale hearing



A- 0623

19

1    at 2:00 p.m. tomorrow as contemplated under the order.

2    And I hereby declare the auction proceedings to be

3    closed.  Thank you for your attendance.

4                    (Proceedings concluded at 5:18 p.m.)

5

6                         - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

A- 0624

20

State of Delaware     )
                      )
County of New Castle )

C E R T I F I C A T E

I, Patricia L. Shelton, Notary Public, do hereby
certify that the foregoing record, pages 2 to 19
inclusive, is a true and accurate transcript of my
stenographic notes taken on Monday, November 1, 2004, in
the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand
and seal this 2nd day of November, 2004, at Wilmington.

Patricia L. Shelton
Certification No. 104-RPR
(Expires January 31, 2005)





EXHIBIT "1"

A.B.DICK SCHEDULE G-Executory Contracts
CAPITAL LEASES
CURE AMOUNTS AS OF SEPTEMBER 26, 2004

| Vendor Number | Name | Lease Number | Address | City | State | Zip | Cure Amount |
|---|---|---|---|---|---|---|---|
| MS2107 | Newcourt Leasing | 689270<br>707874 | 2114B Network Place | Chicago | IL | 60673 | $29,495.00 |
| 0385255 | CitiCapital | 0119286-000 | P.O. Box 8500-9805 | Philadelphia | PA | 19178 | $10,245.00 |
| I089 | IBM Corporation | 577249 | 91272 Collections Center Dr. | Chicago | IL | 60697 | $17,211.00 |
| H220 | Hewlett-Packard | 36854A<br>33357A | P.O. Box 403266 | Atlanta | GA | 30381 | $6,461.00 |
| 0522000 | OFC Capital | 0205063<br>0206013<br>0306023 | P.O. Box 530101, Dept. GA00010 | Atlanta | GA | 30353 | $35,795 |
| MS152 | Insight Global Finance | 180282-8<br>180282-5 | 2114B Network Place | Chicago | IL | 60673 | $39,390 |
| O207 | OFSI | 200-0591815-001 | Department AT 40302 | Atlanta | GA | 31192 | $4,630.00 |
| | | | | | | | $143,339.00 |

See Rider

A- 0627



**Real Estate Leases**

| Location | Address | Lease Expiration Date | Cure Amount as of 9/25/04 |
|---|---|---|---|
| **Dist Ctrs:** | | | |
| IL | 201 Oakton<br>Des Plaines | 2/28/2005 | $  74,203.00 |
| TX* | 2749 W. Airport Freeway<br>Irving | 3/31/2007 | $        - |
| PA | 1549 Behall Dr<br>Harrisburg | 12/31/2006 | $   7,925.00 |
| CO | 2500 W. Eighth Ave.<br>Denver | 2/28/2005 | $   6,734.00 |
| CA* | 4057 W. Shaw Ave., #110<br>Fresno 93722 | 7/31/2007 | $        - |
| **Field Service:** | | | |
| CA* | 2121 W. Crescent Ave.<br>Suite F<br>Anaheim 92801 | 11/30/2005 | $        - |
| CT | 329 Main St.<br>Unit 108<br>Yalesville 06492 | 12/31/2005 | $     875.00 |
| HI | 98-029 Hekaha St.<br>Alea 69701 | 12/31/2004 | $   1,230.00 |
| MO | 914 S. Highway Dr.<br>Fenton 63026 | 12/31/2004 | $   5,958.00 |
| IA | 2600 72nd St.<br>Des Moines 50322 | Month-to-Month | $     561.00 |
| **IMC:** | | | |
| OH | 190 N. Union St., #300<br>Akron 44304 | 1/15/2005 | $   2,659.00 |
| **Field Sales:** | | | |
| GA | 9810-A Medlock Bridge Rd.<br>Suite 205<br>Duluth 30097 (Southern Reg.) | 3/8/2004 | $   1,100.00 |
| Total real estate leases cure amount | | | $ 101,245.00 |

\* July 2004 rent checked cleared account before Chapter 11 filing

A- 0628



A.B. Dick Company
Operating Leases – Machinery and Equipment

| Vendor | Item or Department | Lease # | Address1 | Address | City | ST | ZIP | mo | psi |
|--------|--------------------|---------|----------|---------|------|----|----|----|----|
| Aerac, Midwid Handling | Des Plaines | 4501119 | 1800 W. Hawthorne Lane | | Carol Stream | IL | 60185-1038 | 2300 | 1402 |
| Dictograph Mat. Handling | Des Plaines | 4301918 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60186 | 680 | 680 |
| Dictograph Mat. Handling | Des Plaines | 4387013 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60185 | 680 | 680 |
| Dictograph Mat. Handling | Des Plaines | 01910028 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60185 | 680 | 680 |
| Dictograph Mat. Handling | Des Plaines | 01910063 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60185 | 680 | 680 |
| Dictograph Mat. Handling | Des Plaines | 01910036 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60185 | 477 | 547 |
| Dictograph Mat. Handling | Des Plaines | 41503058 | 1800 W. Hawthorne Lane | | West Chicago | IL | 60848 | | |
| Citicorp Leasing Inc | Delta | 400010 | | | Suite aa | | | | |
| Citicorp Leasing Inc | Des Plaines | 405150 | P.O.Box 6200035 | | Philadelphia | PA | 19115-0285 | 1112 | 1112 |
| Citicorp Vendor Finance | 1 Canon IR2200fs | 207007i | P O BOX 7247-0221 | | Philadelphia | PA | 19170-0321 | | 684 |
| Citicorp Vendor Finance | Canon IR2003/3100 | 323797x | P O BOX 7247-0322 | | Philadelphia | PA | 19170-0322 | 1083 | 1093 |
| Citicorp Vendor Finance | 2 Canon ID3100fs | 323070 | P O BOX 7247-0322 | | Philadelphia | PA | 19170-0322 | 1470 | 1470 |
| Citicorp Vendor Finance | 2 Canon 2525fs | 323231 | P O BOX 7247-0322 | | Philadelphia | PA | 19170-0322 | 1551 | 1551 |
| Citicorp Vendor Finance | 2 Canon IR2520fs | 323231 | P O BOX 7247-0322 | | Philadelphia | PA | 19170-0322 | 1583 | 1583 |
| Citicorp Vendor Finance | Rush Copier at HQ | 323731 | P O BOX 7247-0322 | | Philadelphia | PA | 19170-0322 | 375 | 355 |
| Fleet Capital Leasing | Pinnacle Faxes | 0001-1702228-000 | P O BOX 371462 | | Pittsburgh | PA | 15250-7678 | 0 | 2031 |
| Fleet Bus | Harrisburg | 304711 | 741 Independence Avenue Harrisburg | | Harrisburg | PA | | 92 | 441 |
| Forklift Inc. | Harrisburg | et al 0447110 May | 741 Independence Avenue Harrisburg | | Harrisburg | PA | 17845 | 82 | 441 |
| Financing Private Inc. | Hired | 205152 | P.O. Box 6272 | | Carol Stream | GA | 30993 | | |
| Insight Global Finance | US Office Solutions | 63072913 | P.O. Box 403263 | | Atlanta | GA | | | |
| Insight Global Finance | Mail Room Equip'ml | 100251 | 20710 NETWORK PLAC Chicago | | Chicago | IL | 80325-0310 | 2530 | 2530 |
| Insight Global Finance | Mail Room Equip'ml | 100252 | 20719 NETWORK PLAC Chicago | | Chicago | IL | 60075-0311 | 2412 | 2412 |
| Insight Global Finance | Mail Room Equip'ml | 100253 | 20719 NETWORK PLAC Chicago | | Chicago | IL | 60075-0311 | 1397 | 1397 |
| Insight Global Finance | Mail Room Equip'ml | 107234 | 20719 NETWORK PLAC Chicago | | Chicago | IL | 60075-0311 | 2758 | 2758 |
| Insight Global Finance | Marketing | 0031-0343-01 | P.O. Box 120343050 | | Philadelphia | PA | 19101-2043 | 331 | 331 |
| GFC Capital | Hitachi Kald-imaging | 0107-243 | DEPT CA00210 | P O BOX 549191 | Atlanta | GA | 70550-0101 | | |
| GFC Capital | Computers | 0208502 | as Aka Financial | DEPT CA00310 | Namad | GA | 70374 | | |
| GFC Capital | Network Printers | 0210310 | as Aka Financial | 678 Colonial Park Drive | Namad | GA | 39151-0101 | | |
| GFC Capital | US Office Solutions | 0250331 | DEPT CA00310 | P O BOX 840191 | Atlanta | GA | 39153-0101 | | |
| PGCC | Mail Room Equip'ml | 81102251 | | P O BOX 654100 | LOUISVILLE | KY | 40256-4100 | 1210 | 1210 |
| PGCC | Mail Room Equip'ml | 6102252 | | P O BOX 664100 | LOUISVILLE | KY | 40256-4100 | 1241 | 1241 |
| PGCC | AX0034, 'G3, | 325324 | | P O BOX 655400 | LOUISVILLE | KY | 40256-5400 | 2081 | 2081 |
| PGCC | MaRig - G3a1 Scale | 4103524 | | P O BOX 655400 | LOUISVILLE | KY | 40256-5400 | 162 | 162 |
| PGCC | MaRig - IMG ** | 0184521 | | P O BOX 684402 | LOUISVILLE | KY | 40256-5400 | 700 | 700 |
| Pitney Bowes Inc. | MaRig – System Service quarter | 18151166905 same each | | P O BOX 856100 | LOUISVILLE | KY | 40256-0400 | 290 | 447 |
|  |  |  |  |  |  |  |  | 65 | 154 |
|  |  |  |  |  |  |  |  |  | 270 |
|  |  |  |  |  |  |  | 7190 | | 0 |

A- 0629

**RIDER TO EXHIBIT 1**

In addition to the Cure Amounts set forth in Exhibit 1 attached hereto, the Debtors, subject to the aggregate cap of $500,000 set forth herein, shall pay all post-petition amounts due (such amounts to be determined after giving effect to any credits under the Assumed Leases and any right of setoff of the Debtors) under the Assumed Leases as of the closing of the Sale, with Presstek and/or Silver responsible to pay all such amounts in excess of the aforementioned cap of $500,000; provided, however, that liability for rent under the Assumed Leases shall be pro rated between the Debtors and Presstek and/or Silver based on the actual date of the closing of the Sale.

# EXHIBIT B

A- 0631

## Ricciardi, James P.

| | |
|---|---|
| **From:** | H. Jeffrey Schwartz [jschwartz@bfca.com] |
| **Sent:** | Friday, November 12, 2004 1:08 PM |
| **To:** | RL@stevenslee.com; gravert@mwe.com |
| **Cc:** | jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com; yamada@mitsubishiimaging.com; Ricciardi, James P.; Mason, Richard J. PC |
| **Subject:** | Re: Mitsubishi / AB Dick - Purchase Option Exercise |

The debtors do not view this exercise as being outside the ordinary or regular course of business and hence not requiring prior Court approval in light of there being no financial risk to the estates. If the Committee's view is otherwise, the Debtors are open minded as to proceeding by motion or otherwise. Kindly advise as to the perceived detriment to the estates.

Many thanks,

H. Jeffrey Schwartz

--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Lapowsky, Robert <RL@stevenslee.com>
To: 'gravert@mwe.com' <gravert@mwe.com>
CC: 'Jill Acord' <jill@mitsubishiimaging.com>; 'Donald Bowin' <bowin@mitsubishiimaging.com>; 'Hiroshi Tomimasu' <tomimasu@mitsubishiimaging.com>; 'Shimpei Yamada' <yamada@mitsubishiimaging.com>; 'Ricciardi, James P.' <jricciardi@mcguirewoods.com>; Mason, Richard J. PC <RMason@mcguirewoods.com>; H. Jeffrey Schwartz <jschwartz@bfca.com>
Sent: Fri Nov 12 12:54:44 2004
Subject: Mitsubishi / AB Dick - Purchase Option Exercise

Gary,
    I am in receipt of the notice from Jeff Herden exercising the buyout option under the Postpetition Agreement on behalf of AB Dick. However, I am also in receipt of an email from the Committee counsel to Jeff Schwartz objecting to Mr. Herden's authority to exercise the option and Jeff's response stating that he is unavailable to discuss until Monday. We need to get the issue of Jeff Herden's authority straightened out as soon as possible so that Mitsubishi can know if a valid exercise of the option has occurred. Please advise.

Robert Lapowsky
Stevens & Lee, P.C.
1818 Market St. , 29th Floor
Philadelphia, PA 19103
Tel: 215-751-2866
Fax: 610-371-7958


The information contained in this electronic mail transmission is intended solely for the addressee(s) named above. If you are not an addressee, or responsible for delivering this transmission to an addressee, you have received this transmission in error and you are strictly prohibited from reading or disclosing it. The information contained in this transmission is highly confidential and may be subject to legally enforceable privileges. Unless you are an addressee, or associated with an addressee for delivery purposes, you may violate these privileges and subject yourself to liability if you do anything with this transmission other than immediately contact us by telephone at 610-478-2000 or by electronic mail at ATTYS@STEVENSLEE.COM and delete this transmission. Thank you.

A- 0632

# EXHIBIT C

Message

## Ricciardi, James P.

| | |
|---|---|
| **From:** | Ricciardi, James P. |
| **Sent:** | Friday, November 12, 2004 5:59 PM |
| **To:** | 'jgoldsmith@mwe.com'; Gregory K. Gale; H. Jeffrey Schwartz; RL |
| **Cc:** | jill; bowin; tomimasu; yamada; Mason, Richard J. PC; sgray; jcalabrese; gpollack; GRavert@mwe.com; jparis@mwe.com; John Egan |

**Subject:** RE: Mitsubishi / AB Dick - Purchase Option Exercise

Once again we categorically disagree.  But we can discuss this further at our settlement meeting on Monday.  The committee is hopeful that your client and you or your colleagues will attend.

James Ricciardi
Partner
Tel:212-548-2134
Fax:212-548-2184
Mobile:917-747-9845
jricciardi@mcguirewoods.com

-----Original Message-----
**From:** jgoldsmith@mwe.com [mailto:jgoldsmith@mwe.com]
**Sent:** Friday, November 12, 2004 5:53 PM
**To:** Ricciardi, James P.; Gregory K. Gale; H. Jeffrey Schwartz; RL
**Cc:** jill; bowin; tomimasu; yamada; Mason, Richard J. PC; sgray; jcalabrese; gpollack; GRavert@mwe.com; jparis@mwe.com; John Egan
**Subject:** Re: Mitsubishi / AB Dick - Purchase Option Exercise

Please see section 2.1(l) of the APA, which clearly states that the Purchaser has purchased "all rights of Seller relating to deposits and prepaid expenses, claims for refunds and rights to offset in respect thereof....."

Accordingly, even if the Debtor were entitled to any refund, it is part of the purchased Assets.

James H. Goldsmith
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4416
(617) 535-3800 (fax)
jgoldsmith@mwe.com

************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information

11/15/2004

contained in or attached to this message is strictly prohibited.  Please
notify the sender of the delivery error by replying to this message, and then
delete it from your system.  Thank you.
*****************************************************************************

```
----- Original Message -----
From: "Ricciardi, James P." [jricciardi@mcguirewoods.com]
Sent: 11/12/2004 04:29 PM
To: Gregory K. Gale" <ggale@bfca.com>; H. Jeffrey Schwartz"
<jschwartz@bfca.com>; <RL@stevenslee.com>
Cc: <jill@mitsubishiimaging.com>; <bowin@mitsubishiimaging.com>;
<tomimasu@mitsubishiimaging.com>; <yamada@mitsubishiimaging.com>; Mason,
Richard J. PC" <RMason@mcguirewoods.com>; <sgray@trgusa.com>;
<jcalabrese@trgusa.com>; <gpollack@candlewoodpartners.com>; Gary Ravert; Jim
Goldsmith; Jonathan Paris
Subject: RE: Mitsubishi / AB Dick - Purchase Option Exercise
```

We disagree wholeheartedly.  Even today this "inventory" is property of Mitsubishi and cannot have been transferred
pursuant to the sale order.


James Riccardi
Partner
Tel:212-548-2134
Fax:212-548-2184
Mobile:917-747-9845
jricciardi@mcguirewoods.com

----Original Message----

From: Gregory K. Gale [mailto:ggale@bfca.com]

Sent: Friday, November 12, 2004 5:29 PM

To: Ricciardi, James P.; H. Jeffrey Schwartz; RL@stevenslee.com

Cc: jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com;
yamada@mitsubishiimaging.com; Mason, Richard J. PC; sgray@trgusa.com; jcalabrese@trgusa.com;
gpollack@candlewoodpartners.com; gravert@mwe.com; jgoldsmith@mwe.com; jparis@mwe.com

Subject: RE: Mitsubishi / AB Dick - Purchase Option Exercise

Importance: High



I think the issue is not whether Presstek has rights in the Mitsubishi post petition contract.  Jim is right that the Sale

11/15/2004

Order is clear on that point. The issue is whether Presstek purchased the inventory from Mitsubishi that is in transit to AB Dick. Section 2.1(c) of the APA makes it clear that Presstek purchased all inventory of the Debtors. "Inventory" is defined to include work in progress. The Second Amendment to the APA modifies Section 10.12 of the APA to state that, for purposes of that closing condition, prepaid deposits for inventory count as inventory owned by the Debtors. This Amendment was made in contemplation of Presstek purchasing the Mitsubishi work in progress inventory. Furthermore, the Debtors would not have satisfied this closing condition without counting the prepaid inventory under the Mitsubishi contract.

Presstek does not want to assume the post petition contract. Rather, they want delivery of inventory that they purchased under the APA and for which they gave the Debtors credit in the closing conditions.

I am copying Presstek on this message so that they can respond as to whether I have accurately stated the issue.

Thanks

-Greg

Gregory K. Gale

2300 BP Tower, 200 Public Square

Cleveland, Ohio  44114-2378

216 363 4451

216 363 4588 (fax)

-----Original Message-----
From: Ricciardi, James P. [mailto:jricciardi@mcguirewoods.com]

Sent: Friday, November 12, 2004 4:51 PM

To: H. Jeffrey Schwartz; RL@stevenslee.com

Cc: jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com; yamada@mitsubishiimaging.com; Mason, Richard J. PC; Gregory K. Gale; sgray@trgusa.com; jcalabrese@trgusa.com; gpollack@candlewoodpartners.com; gravert@mwe.com

Subject: RE: Mitsubishi / AB Dick - Purchase Option Exercise

The sale order is unequivocal. Paragraph 9 makes it crystal clear that Presstek has no rights in the Mitsubishi postpetition contract. The committee believes that any attempt to give Presstek any rights thereunder is contrary to the sale order and the bankruptcy code. Unless Presstek pays additional consideration (and no undertaking is additional consideration since it merely reflects an already true fact, that whatever rights the estate has against

11/15/2004

Message

Presstek it has) the exercise of the option is either an abandonment requiring court approval and governed by section 554 or requires court approval as a use or sale of property outside the ordinary course of business. Any use without a corresponding benefit ( here the lack of new consideration by Presstek ) would require section 363 approval, certainly one of a business asset when the debtor is no longer conducting that business. We see no way for the debtors to do what Presstek wants, and is clearly not entitled

to, without court approval.

James Riccardi

Partner

Tel:212-548-2134

Fax:212-548-2184

Mobile:917-747-9845

jricciardi@mcguirewoods.com

-----Original Message-----

From: H. Jeffrey Schwartz [mailto:jschwartz@bfca.com]

Sent: Friday, November 12, 2004 4:36 PM

To: RL@stevenslee.com

Cc: jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com; yamada@mitsubishiimaging.com; Mason, Richard J. PC; Gregory K. Gale; sgray@trgusa.com; jcalabrese@trgusa.com; gpollack@candlewoodpartners.com; Ricciardi, James P.; gravert@mwe.com

Subject: Re: Mitsubishi / AB Dick - Purchase Option Exercise

11/15/2004

The unqualified undertaking would deem the exercise not to have occurred for purposes of refund of deposit.

Many thanks,

H. Jeffrey Schwartz

------------------------

Sent from my BlackBerry Wireless Handheld

-----Original Message-----

From: Lapowsky, Robert <RL@stevenslee com>

To: H. Jeffrey Schwartz <jschwartz@bfca.com>

11/15/2004

CC: jill@mitsubishiimaging.com <jill@mitsubishiimaging.com>; bowin@mitsubishiimaging.com
<bowin@mitsubishiimaging.com>; tomimasu@mitsubishiimaging.com <tomimasu@mitsubishiimaging.com>;
yamada@mitsubishiimaging.com <yamada@mitsubishiimaging.com>; RMason@mcguirewoods.com
<RMason@mcguirewoods.com>; Gregory K. Gale <ggale@bfca.com>; sgray@trgusa.com <sgray@trgusa.com>;
jcalabrese@trgusa.com <jcalabrese@trgusa.com>; gpollack@candlewoodpartners.com
<gpollack@candlewoodpartners.com>;

jricciardi@mcguirewoods.com <jricciardi@mcguirewoods.com>; gravert@mwe.com <gravert@mwe.com>

Sent: Fri Nov 12 16:20:40 2004

Subject: RE: Mitsubishi / AB Dick - Purchase Option Exercise

Jeff,

    I am not sure how to interpret your email. First, ABD is never responsible to pay any refund, so I assume that the
undertaking from Presstek to which you refer is not to protect ABD against the payment of anything. If what you are
saying is that Presstek might agree to make sure ABD is not prejudiced in its refund claim against Mitsubishi, you
must be assuming that ABD could maintain its ability to claim the refund while, at the same time, exercise the option
to buy the pipeline. However, that assumption is incorrect since, once the option is validly exercised, the refund right
disappears by the terms of the contract.

    If I am missing something, please advise.

-----Original Message-----

From: H. Jeffrey Schwartz [mailto:jschwartz@bfca.com]

Sent: Friday, November 12, 2004 4:10 PM

To: jricciardi@mcguirewoods.com; RL@stevenslee.com; gravert@mwe.com

11/15/2004

Cc: jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com; yamada@mitsubishiimaging.com; RMason@mcguirewoods.com; Gregory K. Gale; sgray@trgusa.com; jcalabrese@trgusa.com; gpollack@candlewoodpartners.com

Subject: Re: Mitsubishi / AB Dick - Purchase Option Exercise

If Presstek provides the Debtors an unqualified undertaking pursuant to which the Debtors are satisfied that they will not be prejudiced with respect to any such claim for refund of deposits funded, the Debtors may reinstate the purchase Option Exercise.

Many thanks,

H. Jeffrey Schwartz

---------------------------------

Sent from my BlackBerry Wireless Handheld

11/15/2004

-----Original Message-----

From: H. Jeffrey Schwartz <jschwartz@bfca.com>

To: 'jricciardi@mcguirewoods.com' <jricciardi@mcguirewoods.com>; 'RL@stevenslee.com' <RL@stevenslee.com>; 'gravert@mwe.com' <gravert@mwe.com>

CC: 'jill@mitsubishiimaging.com' <jill@mitsubishiimaging.com>; 'bowin@mitsubishiimaging.com' <bowin@mitsubishiimaging.com>; 'tomimasu@mitsubishiimaging.com' <tomimasu@mitsubishiimaging.com>; 'yamada@mitsubishiimaging.com' <yamada@mitsubishiimaging.com>; 'RMason@mcguirewoods.com' <RMason@mcguirewoods.com>; Gregory K. Gale <ggale@bfca.com>; 'sgray@trgusa.com' <sgray@trgusa.com>; 'jcalabrese@trgusa.com' <jcalabrese@trgusa.com>; 'gpollack@candlewoodpartners.com' <gpollack@candlewoodpartners.com>

Sent: Fri Nov 12 14:53:38 2004

Subject: Re: Mitsubishi / AB Dick - Purchase Option Exercise

On that basis the Debtors hereby revoke their putative exercise of the Purchase Option pending resolution of this dispute.

Many thanks,

H. Jeffrey Schwartz

-----------------------------

11/15/2004

Sent from my BlackBerry Wireless Handheld

-----Original Message-----

From: Ricciardi, James P. <jricciardi@mcguirewoods.com>

To: H. Jeffrey Schwartz <jschwartz@bfca.com>; RL@stevenslee.com <RL@stevenslee.com>; gravert@mwe.com <gravert@mwe.com>

CC: jill@mitsubishiimaging.com <jill@mitsubishiimaging.com>; bowin@mitsubishiimaging.com <bowin@mitsubishiimaging.com>; tomimasu@mitsubishiimaging.com <tomimasu@mitsubishiimaging.com>; yamada@mitsubishiimaging.com <yamada@mitsubisbiimaging.com>; Mason, Richard J. PC <RMason@mcguirewoods.com>

Sent: Fri Nov 12 14:41:13 2004

Subject: RE: Mitsubishi / AB Dick - Purchase Option Exercise

The principal issue here, from the committee's standpoint, is that no benefits should be conferred to Presstek under this agreement because the agreement was specifically not assigned to Presstek, remains estate property and may provide a benefit to the estate if the option is not exercised and Mitsubishi sells the goods for its account and pays a refund to the estate. Presstek had its shot and agreed to a sale without this postpetiton contract. They cannot have any benefits from it without additional payment to the estate and a 363 order approving same.

11/15/2004

Message

James Riccardi

Partner

Tel:212-548-2134

Fax:212-548-2184

Mobile:917-747-9845

jricciardi@mcguirewoods.com

-----Original Message-----

From: H. Jeffrey Schwartz [mailto:jschwartz@bfca.com]

11/15/2004

Message

Sent: Friday, November 12, 2004 1:08 PM

To: RL@stevenslee.com; gravert@mwe.com

Cc: jill@mitsubishiimaging.com; bowin@mitsubishiimaging.com; tomimasu@mitsubishiimaging.com; yamada@mitsubishiimaging.com; Ricciardi, James P.; Mason, Richard J. PC

Subject: Re: Mitsubishi / AB Dick - Purchase Option Exercise

The debtors do not view this exercise as being outside the ordinary or regular course of business and hence not requiring prior Court approval in light of there being no financial risk to the estates. If the Committee's view is otherwise, the Debtors are open minded as to proceeding by motion or otherwise. Kindly advise as to the perceived detriment to the estates.

11/15/2004

Many thanks,

H. Jeffrey Schwartz

Sent from my BlackBerry Wireless Handheld

11/15/2004

Message                                                      Page 13 of 16

-----Original Message-----

From: Lapowsky, Robert <RL@stevenslee.com>

To: 'gravert@mwe.com' <gravert@mwe.com>

CC: 'Jill Acord' <jill@mitsubishiimaging.com>; 'Donald Bowin' <bowin@mitsubishiimaging.com>; 'Hiroshi Tomimasu' <tomimasu@mitsubishiimaging.com>; 'Shimpei Yamada' <yamada@mitsubishiimaging.com>; 'Ricciardi, James P.' <jricciardi@mcguirewoods.com>; Mason, Richard J. PC <RMason@mcguirewoods.com>; H. Jeffrey Schwartz <jschwartz@bfca.com>

Sent: Fri Nov 12 12:54:44 2004

Subject: Mitsubishi / AB Dick - Purchase Option Exercise

11/15/2004

Message

Gary,

I am in receipt of the notice from Jeff Herden exercising the buyout option under the Postpetition Agreement on behalf of AB Dick. However, I am also in receipt of an email from the Committee counsel to Jeff Schwartz objecting to Mr. Herden's authority to exercise the option and Jeff's response stating that he is unavailable to discuss until Monday. We need to get the issue of Jeff Herden's authority straightened out as soon as possible so that Mitsubishi can know if a valid exercise of the option has occurred. Please advise.

Robert Lapowsky

Stevens & Lee, P.C.

1818 Market St , 29th Floor

11/15/2004

Message

Philadelphia, PA 19103

Tel: 215-751-2866

Fax: 610-371-7958

The information contained in this electronic mail transmission is intended solely for the addressee(s) named above. If you are not an addressee, or responsible for delivering this transmission to an addressee, you have received this transmission in error and you are strictly prohibited from reading or disclosing it. The information contained in this transmission is highly confidential and may be subject to legally enforceable privileges. Unless you are an addressee, or associated with an addressee for delivery purposes, you may violate these privileges and subject yourself to liability if you do anything with this transmission other than immediately contact us by telephone at 610-478-2000 or by electronic mail at ATTYS@STEVENSLEE.COM and delete this transmission. Thank you

11/15/2004

Message

11/15/2004

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 04-12002 (JLP) |
| A.B. DICK COMPANY, *et al.*, | : | Jointly Administered |
|  | : |  |
| Debtors. | : | Re: Docket Nos. _____ |
|  | : |  |

## ORDER

Upon consideration of the Emergency Motion Of Mitsubishi Imaging (Mpm), Inc. ("Mitsubishi") for Order Determining Validity of Election Under Post Petition Private Label Sales Agreement (the "Motion"), The Official Committee of Unsecured Creditors (the "Committee") of the A.B. Dick Company, *et al* (the "Debtors"), response to the Emergency Motion Of Mitsubishi Imaging (Mpm), Inc. ("Mitsubishi") for Order Determining Validity of Election Under Post Petition Private Label Sales Agreement by its undersigned counsel and its own motion (the "Cross-motion") for an Order Refunding the Credit Balance to the Debtors' Estates, and IT IS HEREBY:

1.     ORDERED, that Mitsubishi's Motion is granted; and it is further

2.     ORDERED, that the Committee's Cross-Motion is granted; and it is further

3.     ORDERED, that Mitsubishi is directed to take all appropriate steps to divest itself of the Pipeline Product and to return to the estates the contract Refund as set forth in the Postpetition Private Label Sales Agreement.

Dated: November __, 2004
Butte, Montana

_____
United States Bankruptcy Judge

564588v1

A- 0650