# Tab 8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE A. B. DICK COMPANY, ET AL., Debtors | : CHAPTER 11 : : Case No. 04-12002 (JLP) : JOINTLY ADMINISTERED : : Hearing Date 11/17/04 at 11:30 a.m. : Objection deadline: 11/17/04 at 11:30 a.m. : : Re: Docket Item 504 |

**RESPONSE OF MITSUBISHI IMAGING (MPM), INC. TO EMERGENCY MOTION OF PRESSTEK, INC. FOR AN ORDER DIRECTING MITSUBISHI IMAGING (MPM), INC. TO COMPLY WITH THIS COURT'S SALE ORDER**

Mitsubishi Imaging (MPM), Inc. ("**Mitsubishi**"), by and through its counsel, hereby responds to the Emergency Motion of Presstek, Inc. for an Order Directing Mitsubishi Imaging (MPM), Inc. to Comply with this Court's Sale Order (the "**Presstek Motion**"), as follows:

1. Mitsubishi and A.B. Dick Company ("**ABD**") are parties to an agreement (the "**Postpetition Private Label Sales Agreement**") dated August, 2004. Capitalized terms used but not defined herein shall have the meanings stated in the Postpetition Private Label Sales Agreement.

2. Pursuant to the Postpetition Private Label Sales Agreements, among other things, (a) during the term thereof, Mitsubishi agreed to sell and ABD agreed to purchase certain Products from Mitsubishi, (b) pursuant to paragraph 8F thereof, ABD agreed to pay one-third of the total invoice price of all Product identified in any Purchase Order upon acceptance by Mitsubishi of the Purchase Order, one-third within three business days of notification that Product was ready for loading on vessels for shipment to the United States and the balance within three business days of notice of arrival in the United States, (c) pursuant to paragraph 8B

A- 0570

thereof, title to all Product remained with Mitsubishi until delivery to ABD's distribution center, (d) pursuant to paragraph 12A(2)(d) thereof, Mitsubishi had the right to terminate the Postpetition Private Label Sales Agreement immediately upon sale by ABD of substantially all of its assets by providing notice (a "**Termination Notice**") to ABD, (e) pursuant to paragraph 12C thereof, within ten days of delivery by Mitsubishi of a Termination Notice, ABD had the right to exercise an election (the "**Pipeline Purchase Election**") to purchase all inventory subject to outstanding Purchase Orders not yet fully paid for by ABD (the "**Pipeline Product**") for the full balance remaining due, and (f) pursuant to paragraph 8F thereof, after termination of the agreement, Mitsubishi was granted certain rights to resell the Pipeline Product as to which a Pipeline Purchase Election had not been made and ABD was granted certain rights to a refund (the "**Pipeline Refund**") of a portion of the amounts paid by ABD on account of such Pipeline Product. A copy of the Postpetition Private Label Sales Agreement (without exhibits), is attached to the Mitsubishi Motion (defined below) as Exhibit "A" and made part hereof.

3. On November 5, 2004, ABD sold substantially all of its assets to Silver Acquisitions Corp, a subsidiary of Presstek Inc ("**Presstek**"), however, the Postpetition Private Label Sales Agreement was not assigned to Silver or Presstek and remains a contract between ABD and Mitsubishi.

4. On November 5, 2004, following closing on the sale of substantially all of ABD's assets, Mitsubishi sent a Termination Notice to ABD. At the time that Mitsubishi provided the Termination Notice, and to the time of this motion, ABD had paid $2,545,774.94 on account of Pipeline Product and owed an additional amount of $2,255,397.07 on account of such Pipeline Product. Absent the exercise to the Pipeline Purchase Election, ABD will be entitled to a

Pipeline Refund of some portion of the $2,545,774.94 paid by ABD on account of the Pipeline Product.

5. On November 10, 2004, Presstek purported to exercise the Pipeline Purchase Election. By wires dated November 9, 2004 and November 10, 2004, Presstek transferred the sum of $2,255,397.07 (the "**Presstek Payments**") to Mitsubishi, purporting to represent payment in full for the Pipeline Product. On November 11, 2004, Mitsubishi advised Presstek in writing that, because the Postpetition Private Label Sales Agreement was not assigned by ABD to Presstek (or anyone else), only ABD could exercise the Pipeline Purchase Option and further advising that Mitsubishi would either hold the Presstek Payments or return them, at Presstek's option, pending determination whether the Pipeline Purchase Election has been exercised. To date, Presstek has not requested return of the Presstek Payments and Mitsubishi continues to hold them.

6. On the morning of November 12, 2004, ABD purported to exercise the Pipeline Purchase Election with a direction to release the Pipeline Product to Presstek. However, in the afternoon of November 12, 2004, ABD advised Mitsubishi that it was withdrawing the Pipeline Purchase Election. ABD's withdrawal of the election followed receipt by counsel to ABD of an email from counsel to the Official Committee of Unsecured Creditors of ABD (the "**Committee**") stating that the Committee considered the Pipeline Refund to be a valuable asset of the ABD estate which had not been purchased by Silver or Presstek and further stating the Committee's position that any exercise of the Pipeline Purchase Option was outside the ordinary course of ABD's business and required court approval pursuant to Section 363 of the Bankruptcy Code. In response, Presstek has asserted that it believes that it has purchased the Pipeline

Inventory and any rights ABD may have to the Pipeline Refund. The Committee has disputed that position.

7. Finally, in the evening of November 12, 2004, following receipt by counsel to ABD of an undertaking by Presstek to hold the ABD estate harmless, under certain circumstances, ABD advised Mitsubishi that it was reinstating its Pipeline Purchase Election.

8. It is Mitsubishi's understanding that the Committee continues to take the position the Pipeline Purchase Election is invalid.

9. If Mitsubishi were to honor the pending Pipeline Purchase Election, it would be obligated to give ABD credit for the approximately $2.5 million paid by ABD prior to termination of the Postpetition Private Label Sales Agreement, sell the Pipeline Inventory to ABD for the approximately $2.2 million remaining due and release the Pipeline Inventory to Presstek. That result is fair assuming that the pending Pipeline Purchase Election is valid and, as a result, by giving credit for the approximately $2.5 million paid by ABD, Mitsubishi is relieved of any liability on account of the Pipeline Refund obligation. However, if Mitsubishi honors the pending Pipeline Purchase Election and it is later determined that, as asserted by the Committee, the Pipeline Purchase Election was invalid, Mitsubishi would be in the position of having provided the approximately $2.5 million credit but retaining a potential liability for the Pipeline Refund. Obviously, such result is patently unfair and not contemplated by the Postpetition Private Label Sales Agreement.

10. On November 15, 2004, because of the uncertainty regarding whether the pending Pipeline Purchase Election is valid, Mitsubishi filed the Emergency Motion of Mitsubishi Imaging (MPM), Inc. for Order Determining Validity of Exercise of Election Under Postpetition Private Label Sales Agreement (the "**Mitsubishi Motion**"). Pursuant to the Mitsubishi Motion,

Mitsubishi takes no position whether the pending Pipeline Purchase Election is or is not valid. Rather, Mitsubishi simply seeks an order determining whether the pending Pipeline Purchase Election is valid so that it can be sure it is acting appropriately.

11. Consistent with the neutral position taken by Mitsubishi in the Mitsubishi Motion, Mitsubishi takes no position regarding the relief sought by Presstek in the Presstek Motion. However, Mitsubishi would note a number of inaccuracies in the Presstek Motion. They are as follows:

(a) Mitsubishi has never agreed or disagreed with the positions taken by the Committee regarding the validity of the Pipeline Purchase Election made by ABD.

(b) Mitsubishi was not a party to any of the negotiations between ABD and Presstek and, in particular, was not a party to any negotiations by which ABD obtained credit against the working capital covenant for moneys paid to Mitsubishi under the Postpetition Private Label Sale Agreement. Further, Mitsubishi was not "aware that pre-paid inventory was intended to be included among the assets sold to Presstek." Presstek Motion ¶16.

(c) Because ABD's counsel confirmed to Mitsubishi's counsel that Jeffrey Herden was an officer of ABD authorized to effect the Pipeline Purchase Election, Mitsubishi does not, and has never, disputed the right of Jeffrey Herden to act as an authorized representative of ABD for such purpose. Rather, Mitsubishi has simply noted that the Committee has questioned the ability of Mr. Herden (or any ABD officer) to exercise the election without court approval and Mitsubishi has indicated to Presstek that such issue needed to be resolved. While not really relevant, Mitsubishi provided the Termination Notice to Mr. Herden because the notice section of the Postpetitiion Private Label Sales Agreement required that the notice be sent to him, not

because Mitsubishi was taking any position as to who was or was not an authorized representative of ABD.

(d) Presstek asserts that "No language regarding the right to a refund in the event of a termination can be found in the Private Label Sales Agreement." Presstek Motion ¶27. Presstek is incorrect. Pursuant to subparagraphs 8F(i) and (ii) of the Postpetition Private Label Sales Agreement, upon default by ABD, and assuming no exercise of the Pipeline Purchase Election, Mitsubishi has the right to resell the Pipeline Inventory but is obligated to pay a refund to ABD. However, ABD's right to a refund is not limited to situations involving an ABD default. Specifically, paragraph 8F also provides, "At any time on or after termination of this Agreement, MITSUBISHI may elect, at its sole option and discretion exercised by facsimile notice delivered within ten (10) days of such termination, to exercise the rights granted pursuant to subparagraphs (i) and (ii) above as to all undelivered Product subject to any outstanding Purchase Orders as to which [a Pipeline Purchase Election] has not already been made or been deemed made. Absent a timely election by MITSUBISHI, MITSUBISHI shall be deemed to have elected to exercise rights after termination under subparagraph (ii)." (emphasis supplied). In fact, Mitsubishi has not exercised a timely election after termination and, so, is deemed to be proceeding under subparagraph (ii) which, by its terms, provides a refund right to ABD.

WHEREFORE, Mitsubishi respectfully requests an Order granting such relief as is just and proper.

Dated: November 16, 2004              STEVENS & LEE, P.C.

*Thomas G. Whalen, Jr.*
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Tel: (302) 425-3304
Fax: (610) 371-8512
E-mail: tgw@stevenslee.com

and

Robert Lapowsky, Esquire
1818 Market St., 29th Floor
Philadelphia, PA 19103
Tel: (215) 751-2866
Fax: (610) 371-7958
E-mail: rl@stevenslee.com

*Attorneys for Mitsubishi Imaging (MPM), Inc.*