# Tab 10

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------x
In re                                  :   Chapter 11
                                       :
A.B.DICK COMPANY, *et al.*             :   Case No. 04–12002 (JLP)
                                       :
       Debtors.                        :   Jointly Administered
---------------------------------------------------x

**STATEMENT OF THE DEBTORS: (A) IN RESPONSE TO THE EMERGENCY MOTION OF MITSUBISHI IMAGING (MPM), INC. FOR ORDER DETERMINING VALIDITY OF EXERCISE OF ELECTION UNDER POSTPETITION PRIVATE LABEL SALES AGREEMENT; (B) IN SUPPORT OF THE EMERGENCY MOTION OF PRESSTEK, INC. SEEKING AN ORDER DIRECTING MITSUBISHI IMAGING (MPM) INC. TO COMPLY WITH THIS COURT'S SALE ORDER; AND (C) IN RESPONSE TO THE EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO COMPEL DEBTORS, SILVER AND PRESSTEK TO COMPLY WITH SALE ORDER ENTERED NOVEMBER 3, 2004 AND THE SECOND AMENDMENT TO THE ASSET PURCHASE AGREEMENT**

I.                          **INTRODUCTION**

A.B.Dick Company, Paragon Corporate Holdings, Inc., Multigraphics LLC, and Interactive Media Group, Inc., debtors and debtors in possession in the above-captioned, jointly administered cases (collectively, the "Debtors"), by and through their undersigned counsel, respectfully submit this Statement: (A) in Response to the Emergency Motion of Mitsubishi Imaging (MPM), Inc. for Order Determining Validity of Exercise of Election Under Postpetition Private Label Sales Agreement; (B) in Support of the Emergency Motion of Presstek, Inc. Seeking an Order Directing Mitsubishi Imaging (MPM) Inc. to Comply with this Court's Sale Order; and (C) in Response to the Emergency Motion of The Official Committee of Unsecured Creditors to Compel Debtors, Silver and Presstek to Comply with Sale Order Entered November 3, 2004 and the Second Amendment to the Asset Purchase Agreement.

A- 0683

The Debtors respectfully submit that Mitsubishi Imaging (MPM), Inc. ("Mitsubishi") should be authorized to deliver the Pipeline Product[1] to Presstek, Inc. or Silver Acquisitions Corp. (collectively, the "Purchaser"). Such a result is consistent with and in furtherance of the terms of the Asset Purchase Agreement (the "APA") and the Sale Order. More importantly, it is in the best interests of the Debtors' former customers, employees and creditors.

## II. FACTUAL BACKGROUND

The Debtors and Mitsubishi were parties to a prepetition sales agreement dated October 1, 2002, pursuant to which Mitsubishi agreed to sell and the Debtors agreed to purchase certain product[2] as described therein (the "Prepetition Agreement"). A major benefit of the Prepetition Agreement was the credit line provided to the Debtors, which, *inter alia*, enabled the Debtors to pay for product when it was delivered to the Debtors.

Shortly before the petition date, Mitsubishi reduced the Debtors' credit line to $0.00. Subsequent to the petition date, Mitsubishi advised the Debtors that it would not deliver any product or accept any purchase orders unless the Debtors agreed to an Addendum which modified the Prepetition Agreement in several material respects and required the Debtors to assume the Prepetition Agreement. Given that their bankruptcy cases had only recently been filed, the Debtors exercised their business judgment and did not execute the proposed Addendum. Nevertheless, the Debtors needed to ensure an uninterrupted supply of Mitsubishi product so that the Debtors could satisfy

---

[1] As defined in Mitsubishi's Motion.

[2] Mitsubishi is the only source for the product at issue. This product is manufactured in Japan and may take 60 to 90 days to reach the United States.

2

customer orders.[3] The Debtors and Mitsubishi subsequently agreed to enter into a Private Label Sales Agreement, which was approved by the Court on August 12, 2004 (the "Post Petition Agreement"). The Post Petition Agreement provided that the Debtors would pay one-third of the total invoice price upon execution of a purchase order, one-third when the product was ready for loading onto a vessel for shipment and the balance when the vessel arrived in the United States. *See* Post Petition Agreement at Paragraph 8(F).

In the event the Debtors defaulted under the Post Petition Agreement (i.e., were unable to pay any balance owed with respect to the Pipeline Product), Mitsubishi was granted a Resale License to use the Debtors' "trademarks and patented technology to the extent necessary to complete and sell such Product." Post Petition Agreement at Paragraph 8(F). Upon termination of the Post Petition Agreement, the Debtors were given the right "to purchase all Product subject to any outstanding Purchase Order identified in such notice by paying MITSUBISHI an amount equal to the total invoice price of the Product identified in such Purchase Orders less the sums already paid against the said Purchase Orders pursuant to Paragraph 8(F) above." Post Petition Agreement at Paragraph 12(C). In other words, the Debtors obtained the right to purchase the Pipeline Product, **for which it had already made partial payment.**

With respect to assignment of the Prepetition Agreement and the Post Petition Agreement, the Post Petition Agreement provided:

> This Agreement shall not be assigned by either party without the prior written consent of the other. Each party reserves all rights to seek (in the case of A.B. DICK ) or

---

[3] The Debtors also were advised that if a satisfactory agreement was not timely reached, the factory in Japan would shut down for a period of time. This would have severely impacted the Debtors' ability to remain a going concern.

3

> oppose (in the case of MITSUBISHI) assumption and assignment of the Prepetition Agreement pursuant to the provisions of Section 365 of the Bankruptcy Code. **In that regard, MITSUBISHI does not concede that the Prepetition Agreement is an executory contract subject to assumption or assumption and assignment and asserts that, in any event, under the Prepetition Agreement, MITSUBISHI has the unilateral right to set A.B. DICK's credit line and that, prior to the filing of the A.B. DICK bankruptcy petition, the A.B. DICK credit line was reduced to $0.** MITSUBISHI also reserves the right to move to compel assumption or rejection of the Prepetition Contract at any time.

Post Petition Agreement at Paragraph 10 (emphasis added).

Although the Debtors reserved any rights they had to assume or assign the Prepetition Agreement, no final decision with respect to this issue was made at that time.[4] On October 1, 2004, after reviewing all of their agreements, the Debtors filed Schedules of Executory Contracts, Unexpired Leases and Related Cure Amounts of the Debtors as of September 29, 2004 and Reservation of Rights (the "October 1 Schedules").[5] The October 1 Schedules set forth eleven (11) categories of agreements the Debtors reserved the right to assume and assign.[6] Since neither the Prepetition Agreement nor the Post Petition Agreement are executory contracts, these agreements were not included in the October 1 Schedules.

---

[4] Although A.B.Dick's Schedule G – Executory Contracts and Unexpired Leases – included most all agreements A.B.Dick had with third parties, this Schedule stated "**THE SCHEDULING OF AN AGREEMENT ON THIS SCHEDULE G DOES NOT CONSTITUTE AND SHALL NOT BE DEEMED A WAIVER OF THE DEBTOR'S RIGHT TO CHALLENGE THE EXECUTORY NATURE OF THE AGREEMENT OR THE LEGAL STATUS THEREOF.**" (emphasis in original).

[5] The October 1 Schedules were amended on October 6, 2004.

[6] As of this date, the Debtors have assumed and assigned all of the agreements in eight (8) of the eleven (11) categories. The only agreements presently at issue appear to be the Vendor Agreements set forth on Exhibit A to the October 1 Schedules, and other vendor agreements not set forth therein.

4

Pursuant to the Post Petition Agreement, the Debtors continued to order product from Mitsubishi and pay for it as required by Paragraph 8(F). As of the date of closing, the Debtors had issued purchase orders to Mitsubishi totaling $4,801,171.94 and had paid Mitsubishi $2,545,774.94 pursuant to Paragraph 8(F) of the Post Petition Agreement. The outstanding balance of $2,255,397 was to be paid upon delivery of the Pipeline Product to the United States.

### III.        ARGUMENT

Pursuant to its Motion, Mitsubishi seeks direction from the Court as to whether it should release the Pipeline Product to the Purchaser. The Debtors respectfully submit that release of the Pipeline Product to the Purchaser is consistent with the terms of the APA and the Sale Order, and in furtherance of the transactions contemplated thereby.

Pursuant to Section 2.1 of the APA, the Purchaser purchased all of the Seller's "right, title and interest in and to all of the Seller's property and assets, real, personal or mixed, tangible and intangible, of every kind and description, wherever located . . .[.]" The purchased assets specifically included "all rights of Seller relating **to deposits and prepaid expenses, claims for refunds** and rights to offset in respect thereof . . .[.]" APA at Section 2.1(l)(emphasis added). Given the extent of the purchased assets, the Debtors respectfully submit that the Purchaser acquired any and all rights the Debtors had with respect to the Pipeline Product. This is especially true since the Purchaser would be entitled to any refund that might accrue if the Debtors terminated the Post Petition Agreement and Mitsubishi exercised its rights under the Resale License.[7]

---

[7] Although Mitsubishi has an obligation to mitigate any damages, it is unknown whether any refund would be due and owing if the Pipeline Product was sold off by Mitsubishi pursuant to Paragraph 8(F) of the Post Petition Agreement.

A- 0687

Delivery of the Pipeline Product to the Purchaser will not give the Purchaser rights under the Post Petition Agreement. Rather, delivery of the Pipeline Product to the Purchaser is simply providing the Purchaser with the benefit of its bargain, i.e., the inventory it purchased and for which it gave the Debtors credit in the closing conditions. Section 10.12 of the APA originally stated that the Purchaser was not obligated to close the sale unless the Debtors and certain of their affiliates had a certain dollar amount of inventory. The Second Amendment to the APA modified Section 10.12 to state that, for purposes of such closing condition, prepaid deposits for inventory made by the Debtors were to be counted as inventory actually owned by the Debtors at closing. The parties would not have agreed to this provision unless the Purchaser was purchasing the estates' rights in the partially pre-paid inventory.

Consequently, the Purchaser should be entitled to receive the Pipeline Product ordered by the Debtors, which product is essential to enable the Purchaser to satisfy orders from the Debtors' former customers. To the extent it is determined that the Debtors' estates are entitled to a refund or that Presstek must assume and cure any executory contracts, that can be determined at a subsequent hearing. For purposes of clarity, the Debtors believe Schedule G contains agreements that may not be executory contracts. The Debtors further believe that the population of their executory contracts is limited to those agreements identified in the October 1 Schedules, as amended on October 6, 2004.

A- 0688

WHEREFORE, the Debtors respectfully request that the Court enter an Order:

(i) authorizing Mitsubishi to deliver the Pipeline Product to the Purchaser; and

(ii) providing such other and further relief as this Court deems proper.

Dated: Wilmington, Delaware         Respectfully submitted,
November 17, 2004

/s/ H. Jeffrey Schwartz
H. Jeffrey Schwartz (OBR #0014307)
John A. Gleason (OBR #0039150)
Michael D. Zaverton (OBR #0038597)
BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 363-4500
(216) 363-4588 (Facsimile)
jschwartz@bfca.com
jgleason@bfca.com
mzaverton@bfca.com

Attorneys for A.B.Dick Company, *et al.*,
Debtors and Debtors in Possession

and

/s/ Frederick B. Rosner
Frederick B. Rosner, Esq. (No. 3995)
JASPAN SCHLESINGER HOFFMAN LLP
913 Market Street, 12th Floor
Wilmington, DE 19801
Telephone: 302-351-8000/8005
Facsimile: 302-351-8010
frosner@jshllp-de.com

Local Counsel for A.B.Dick Company,
*et al.*, Debtors and Debtors in Possession

7

A- 0689